452 P.2d 195

**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Elden S. SMITH, Defendant-Appellant.**
**No. 240.**

Court of Appeals of New Mexico.
Feb. 28, 1969.

Heister H. Drum, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Justin Reid, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

Defendant appeals from a judgment convicting him of second degree murder.

The pertinent facts are:

(1) Defendant and his wife had been estranged for some time prior to August 5, 1967.

(2) During the afternoon and evening of August 5, 1967, defendant, having learned where his wife and children were living, went by the house on several occasions, but no one was at home. He returned to the house at about 11:00 p.m. He had been waiting outside just a short time when his wife, children and decedent, a Mr. Robert Perea, arrived. The wife, children and decedent entered the house without seeing defendant, who remained in hiding outside. He could hear and see only portions of what was said and done by those inside the house. At one point he claims he did see his wife and decedent

embrace and heard decedent express his love for her.

(3) Shortly after the lights went out and all inside the house had apparently retired for the night, which was about midnight, he went to his automobile, which was parked about a block away, and secured a gun. He returned to the house, broke in through a screen door, proceeded to a bedroom, saw decedent in bed, or getting out of bed, and shot him.

(4) Defendant then drove back to the home of a friend with whom he had been staying. He arrived there at about 1:15 a.m., and at about 2:00 a.m. told his friend he had shot a man.

(5) At about 7:30 that morning, which was a Sunday, defendant and his friend heard on the radio or television that the man who had been shot died. Thereupon defendant telephoned a lawyer and was told to come to the lawyer's office. He and his friend went to the office previously occupied by the lawyer. The office was locked.

(6) After some discussion, the friend then drove defendant to the police station.

(7) Defendant entered the police station, approached Officer Rhoten, and announced: "I want to turn myself in." The officer replied: "Okay." Officer Rhoten knew defendant from a prior incident, and also knew he was wanted for investigation in connection with the homicide.

(8) Officer Rhoten took defendant to Officer Parker at the booking desk. Officer Parker advised defendant of his rights to remain silent and to consult with a lawyer, that a lawyer would be appointed for him if he was unable to employ one, and that he was being booked for homicide.

(9) While defendant was being booked, Officer Rhoten remarked, "* * * that Robert [decedent] must have given him [defendant] a bad time." The officer testified that plaintiff said, "yeah, that he [defendant] had been after him [decedent] for a long time to get him." The testimony of Officer Rhoten, as to his remark and

defendant's reply, was received into evidence without objection.

(10) From the booking desk, Officer Rhoten took defendant to Detective Chavez. Officer Chavez advised defendant of his rights by reading from a standard form used by the Albuquerque Police entitled, "Advice of Rights Form." Officer Chavez also gave defendant a copy of this "Advice of Rights Form." The following appears on the form which was used in this case, and which was signed by Officer Chavez and witnessed by Officer Garcia:

. "Suspect: Elden S. Smith

"On this 6 day of Aug., 1966, at 11:30 a.m. o'clock * * * I gave the following warning and received the following responses from the above named suspect:

"1. We are investigating murder of Robert Perea.

"2. You have a right to remain silent.

"3. Anything you say can be used against you in Court.

"4. You are entitled to talk to a lawyer before answering any questions, and to have one here during questioning.

"5. If you want a lawyer, but do not have the money to hire one, then one will be provided for you by the judge.

"6. Do you understand what I have told you? Yes.

"7. Do you want to go ahead and talk to me about this matter? I will tell you what I did."

(11) Defendant then proceeded to relate many of the details leading up to the shooting, the shooting of decedent by him, and where he had thrown the gun after the shooting. The gun was later recovered.

(12) Defendant admitted that, after he told Officer Chavez he did not wish to make any statements until he had talked to a lawyer, no further questions were asked of him.

Defendant objected to the testimony of Officer Chavez concerning what he had related to the officer. As we understand his objection, he admitted that the matters recited on the "Advice of Rights Form" complied with the requirements set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), but he urged that the officer's testimony was inadmissible because there was a failure by the State to produce a written waiver of these rights signed by defendant, and a failure of the evidence to establish that defendant had knowingly and understandingly waived these rights.

The trial court heard defendant's arguments and permitted defendant to examine the officer at length out of the presence of the jury. The court ruled that the officer could properly relate what defendant had stated by way of confession, and that the question of the voluntariness of the confession would be submitted to the jury.

Defendant relies upon two points for reversal. His first point is that he "* * * was denied due process of law and his right against self-incrimination * * * when the trial judge admitted, over objection, the alleged oral statements by Defendant to Officer Chavez, * * *" Although the point as stated does not include the remark made by defendant at the booking desk, which is referred to in Paragraph No. 9 above, defendant argues that the advice given by Officer Parker to defendant as to his rights was inadequate, and that, in any event, there is no evidence of an intelligent waiver of his privilege against self-incrimination.

█ As above stated no objection was made to the testimony of Officer Rhoten in which he related the content of his remark and defendant's response thereto. Defendant had already been advised of his rights to an attorney and to remain silent. Even if defendant had a right to have this testimony excluded, he waived such right when he failed to make objection thereto or to raise any question as to its admissibility. See State v. Minor, 78 N.M. 680, 437 P.2d 141 (1968); State v. Sharp, 78 N.M. 220, 430 P.2d 378 (1967); State v. James, 76 N.M. 376, 415 P.2d 350 (1966).

■ We are also of the opinion that the admission of the statement by defendant did not violate his privilege against self-incrimination, and that nothing said in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), or in Miranda v. Arizona, supra, requires, or even suggests, that under the circumstances here present the admission into evidence of defendant's statement was improper. The remark by defendant was completely uncoerced, and was not made in connection with any interrogation of him. It was voluntarily made in response to a remark made by Officer Rhoten. The remark by the officer might have suggested some expected response, but it certainly was not put as a question to defendant, and did not suggest that the officer contemplated any such response as was made by defendant.

In State v. Fagan, 78 N.M. 618, 435 P.2d 771 (Ct.App.1967), a somewhat similar contention was urged upon and rejected by this court. See also State v. Hall, 78 N.M. 564, 434 P.2d 386 (1967); State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967).

As to the statements made by defendant to Officer Chavez, these statements were made after defendant was advised of his rights by Officer Parker at the booking desk; after he had been advised of his rights by Officer Chavez in reading from the "Advice of Rights Form"; after he had been furnished a copy of the "Advice of Rights Form"; after he had stated he understood what had been said to him about his rights; and after he stated, "I will tell you what I did." In our opinion, this evidence amply supports the trial court's ruling that the statements were properly admissible.

In the evidence presented to the jury, after the court's preliminary inquiry out of the presence of the jury, nothing was said about defendant having been furnished a copy of the "Advice of Rights Form." However, there was substantial evidence before the jury to support a finding that defendant voluntarily made the statements to Officer Chavez.

■ A voluntary waiver of the right or privilege against self-incrimination need not be reduced to writing and signed by defendant. See State v. Sisneros, 79 N.M. 600, 446 P.2d 875 (1968); State v. Sanders, 79 N.M. 589, 446 P.2d 639 (1968); State v. Montoya, 78 N.M. 294, 430 P.2d 865 (1967); State v. Gutierrez, 79 N.M. 732, 449 P.2d 334 (Ct.App.) decided November 27, 1968.

■ The test of voluntariness is not dependent upon the utterance of a shibboleth, but rather upon a clear manifestation by words and circumstances of a free and unconstrained choice. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); State v. Kremens, 52 N.J. 303, 245 A.2d 313 (1968); State v. Fagan, supra. Here defendant was advised of his rights, stated he understood them, and that he would tell what he had done. The fact that defendant advised the officer he did not wish to make any further statements until talking to a lawyer, at which time the interrogations ceased, was further evidence that the statements he had given were knowingly and voluntarily made. United States v. Hayes, 385 F.2d 375 (4th Cir. 1967).

■ The evidence substantially supports the preliminary determination by the court, and a determination by the jury, that the statements were voluntarily made. Thus, these determinations are binding upon this court. State v. Fagan, supra; see also State v. Montoya, supra.

Defendant next contends that the trial court should have dismissed the counts charging him with murder in the first and second degrees because the evidence showed he was in a rage and unable to control himself.

Defendant offered the testimony of a psychologist and two psychiatrists. All three testified, in substance, that defendant has a mental or personality defect, that he is inclined to violent emotional eruptions, and that when in a rage he is unable to control himself.

Defendant admits that this testimony was insufficient to establish the defense of insanity. State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908 (1959), 78 A.L.R.2d 908; State v. White, 58 N.M. 324, 270 P.2d 727 (1954).

However, he argues that since the State offered no expert testimony to contradict the opinions of his experts (the opinions were that he was probably in a rage and unable to control himself) there was no substantial evidence upon which the jury could have found him guilty of second degree murder. He, in effect, argues that the verdict of guilty of second degree murder amounted to an arbitrary disregard of the testimony of his experts, contrary to the jury's duty in this regard as announced in Duran v. Rodriguez, 381 F.2d 733 (10th Cir. 1967); State v. Chavez, 78 N.M. 446, 432 P.2d 411 (1967); Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940); People v. Richetti, Co.Ct., 109 N.Y.S.2d 29 (1951).

Nothing said in any of these cases compels the trier of the facts to disregard the non-expert testimony and to accept the opinions of defendant's medical experts as to his probable state of mind and incapacity to control his will at the time of committing a criminal act. The jury was not required to accept these expert opinions and disregard all other evidence bearing on the question of his mental and emotional state, nor was the trial court bound to accept these expert opinions and dismiss the charges of first and second degree murder. These medical opinions were not the only competent evidence upon the question of defendant's mental capacities and his mental and emotional state, and they were not conclusive. The purpose of an expert's opinion is to aid the trier of the facts in making a determination or decision on the issue upon which the opinion is given, or toward which it is directed, and such an opinion does not preclude the trier of the facts from considering non-expert evidence on the issue. An expert opinion is not intended to conclude the trier of the facts in determining or deciding the issue. See Lopez v. Heesen, 69 N.M. 206, 365 P.2d 448 (1961); Seal v. Blackburn Tank Truck Service, 64 N.M. 282, 327 P.2d 797 (1958); Lucero v. Los Alamos Constructors, Inc. (Ct.App.) 79 N.M. 789, 450 P.2d 198 decided January 24, 1969.

The judgment of conviction should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.