666 P.2d 1274
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Phillip BOEGLIN, Defendant-Appellant.**

**No. 5983.**

Court of Appeals of New Mexico.

June 23, 1983.

Paul G. Bardacke, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Santa Fe, Michael L. Stout, Dist. Public Defender, Roswell, for defendant-appellant.

## OPINION

DONNELLY, Judge.

Defendant appeals the trial court's order denying his motion to suppress certain oral and written statements. We granted an interlocutory appeal. We discuss (1) claim of improper initiation of questioning and (2)

issue as to waiver of counsel. We discuss both issues jointly.

*Facts*

Defendant was charged with the kidnapping and murder of David Eastman on February 12, 1982, in Eddy County. Additionally, defendant was charged with conspiracy to commit the killing, conspiracy to distribute a controlled substance (methamphetamine) and possession of a controlled substance (methamphetamine).

On February 12, 1982, Eastman's body was discovered on the Loving Highway, several miles from the Carlsbad city limits. Decedent had been shot several times and stabbed. The same morning, defendant and two other individuals were arrested and charged with the homicide. Following defendant's arrest, he was advised of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), and questioned during a session which was partly tape recorded (initial statement). After he was advised of his rights, defendant denied any knowledge of the homicide and requested an attorney. Following this response, Officer DeLuche asked defendant for consent to take his clothing for testing, which was denied. Thereafter, DeLuche stopped the tape recording of the interview with defendant. Defendant was not taken from the interview room; he remained there with Ray Ahlstrom, a sheriff's investigator.

The evidence is conflicting as to the nature of the conversations which occurred after the recording was stopped. Ahlstrom testified that he entered into "casual" conversation with defendant at that point; he said, "I'm sure at that time some of the events that had happened in the previous hours were discussed. And I'm certain that I had more than once probably asked him once again to tell us the truth, go back over this." Ahlstrom also testified on cross-examination that defendant was not in complete control of his thought processes nor thinking clearly, so he tried to "stabilize him as to his emotional condition." Ahlstrom testified that after defendant request-

ed an attorney, he was asked several questions about the victim's death. He stated also that approximately 15 minutes later, at 9:20 a.m., the interrogation of defendant continued and this portion of the interview was tape recorded (second statement).

When the recording began again, DeLuche told defendant: "Mr. Boeglin, earlier you indicated to me when I was advising you of your rights that you, you wanted the services of an attorney before you talked to us. It is now your decision that you will go ahead and, and talk to us about your activities without the presence of an attorney?" The defendant then responded, "Yeah," and proceeded to give a statement explaining his whereabouts and again denying any involvement in the homicide. Thereafter, defendant was booked and processed into the Eddy County jail.

During the booking process, defendant reiterated that he needed an attorney and was permitted to make a telephone call to the office of a local private attorney. Defendant did not speak directly to the attorney but relayed his request to obtain counsel to a secretary in the attorney's office. Shortly after 1:15 p.m., a message was received from the attorney's office that he would represent defendant if he received $10,000 "up front cash." A jailer relayed this information to defendant. Defendant indicated that he could not afford that amount of money. The record does not indicate that any effort was made by the State to provide defendant with a court appointed lawyer until the time of his arraignment.

Approximately an hour after he learned the private attorney wanted $10,000 in order to represent him, defendant asked Don Maxwell, the booking officer at the jail, to let him talk to the district attorney. The officer phoned the district attorney's office and relayed this request to either an assistant district attorney or Denis DeLuche, the district attorney's investigator with whom defendant had spoken earlier. Following this communication, defendant was picked up from the jail and taken to the district attorney's office.

At approximately 3:13 p.m., defendant arrived at the district attorney's office and again met with DeLuche and Carrasco. DeLuche once more advised defendant of his *Miranda* rights and asked him "[d]o you want to talk to us again?" Defendant indicated that he did and that he was hoping he "could make some sort of deal."

DeLuche told defendant he could not offer him any deals. Thereafter, defendant proceeded to give a statement (third statement) implicating himself in Eastman's death. He stated that prior to the homicide he had gone to the house of a co-defendant and "got off on some crystal" (methamphetamine) and had been taking the drug prior to his arrest. After giving this statement, defendant led sheriff's officers to the place where some of the murder weapons and other evidence had been hidden. The officers recovered a .25 caliber automatic pistol, a knife, and a watch.

At approximately 10:20 p.m. on the same day, still another tape recorded statement was obtained from the defendant by sheriff's officers (fourth statement). Again, defendant was read the *Miranda* warnings at the outset of the interview. Defendant was asked whether he wanted an attorney "right now" and he replied "not really, you already know all this stuff anyway." Under further questioning, defendant confessed to having participated in events surrounding the homicide.

Several months later on May 10, 1982, pursuant to a search warrant, police searched defendant's home and premises.

At the pretrial hearing on defendant's motion to suppress, the State called a number of police officers who were present when the various oral statements had been taken from defendant. Defendant presented no witnesses but cross-examined the State's witnesses. At the conclusion of the hearing, the trial court found that defendant's constitutional rights were not violated by the taking of the statements given by him on February 12, 1982, and that he had been advised of his rights prior to each statement. The court also adopted findings including:

3. That as to any statement that may have been taken on February 13, 1982, that statement shall be suppressed due to the defendant invoking his right to counsel and counsel being appointed at his arraignment.

4. That there was no violation of the defendant's constitutional rights in the seizure of physical evidence on February 12, 1982 in that no evidence to be utilized in this case was taken; and the defendant has failed to meet his burden as to the seizures pursuant to the Search Warrant of May 10, 1982.

Conclusions of law adopted by the court in its order also stated:

1. That the defendant's Motion to Suppress Physical Evidence seized on February 12, 1982 and May 10, 1982 be, and hereby is, denied.

\* \* \* \* \* \*

3. That the defendant's Motion to Suppress Oral and Written Statements be, and hereby is, granted as to any statements made by defendant on February 13, 1982.

Defendant contends that after he advised police officers that he desired an attorney to represent him, police made no effort to obtain an attorney on his behalf and initiated further conversations with him concerning the homicide of David Eastman. Defendant argues that the actions of police officers in continuing to question him after he indicated he wanted an attorney invalidated any subsequent statements given by him.

■ Resolution of this issue turns on the factual question of whether the defendant, after invoking his right to counsel (1) knowingly, voluntarily and intelligently elected to waive such right and (2) whether thereafter he initiated further communication with the authorities. Waiver is an intentional abandonment of a known right. *State v. Mascarenas,* 84 N.M. 153, 500 P.2d 438 (Ct.App.1972). As stated in *State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978) (*Greene II*), "The state bears a heavy burden of establishing such waiver by a pre-

ponderance of the evidence. Courts indulge in every reasonable presumption against waiver." In order for a waiver of the constitutional right to counsel to be valid, such waiver must have been given voluntarily, knowingly, and intelligently, and the person must have been adequately informed as to his rights. *Miranda v. Arizona, supra.*

*Miranda* held that the Fifth and Fourteenth Amendments to the Federal Constitution prohibit the use of incriminatory statements by an accused following his arrest or being held in custody, unless all interrogation is preceded by advice to him that he has the right to remain silent and to the presence of an attorney furnished free of charge if the defendant can not afford one. *Miranda* also held that when an accused indicates that he wishes to remain silent, the interrogation must cease; if he requests counsel, questioning must cease until after an attorney for defendant is obtained and present. Statements or admissions elicited contrary to the requirements of *Miranda* are subject to suppression on motion of defendant. *See State v. Harge,* 94 N.M. 11, 606 P.2d 1105 (Ct.App. 1979).

In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the *Miranda* safeguards were expanded to preclude either express questioning by police of an accused or any words or actions on the part of the police that the officers "should know are reasonably likely to elicit an incriminating response from the suspect." The *Innis* court held, however, that the prosecution could use a defendant's incriminatory statements given spontaneously or without police prompting. *See State v. Edwards,* 97 N.M. 141, 637 P.2d 572 (Ct.App.), *cert. denied,* 97 N.M. 621, 642 P.2d 607 (1981).

The United States Supreme Court in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), amplified its holding in *Miranda* and articulated guidelines applicable to the determination of whether an accused, having expressly requested counsel, thereafter waived his right to an attorney during questioning. The court in *Edwards* held:

[A]lthough we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, *see North Carolina v. Butler,* [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)], the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, *a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.* [Footnote omitted.] *We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.* [Emphasis added.]

Decisions since *Miranda* have elaborated upon the requirements of a defendant's right to counsel during police custodial interrogation. Citing the latter cases of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); and *Rhode Island v. Innis, supra,* Justice White, writing for the majority in *Edwards v. Arizona, supra,* stated that "[w]e reconfirm these views and, to lend them substance, emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel."

The trial court, in ruling upon defendant's motion to suppress herein, did not expressly determine whether (1) defendant knowingly, intelligently and voluntarily waived his right to counsel after requesting an attorney, and (2) whether after invoking his right to counsel, the defendant or the police initiated the further conversations which resulted in the giving of his several

statements. The order entered by the court below found: "there was no violation of the defendant's constitutional rights in the taking of his statement during the morning hours of February 12, 1982, or in the taking of his statement at approximately 3:13 P.M. on February 12, 1982, nor the taking of his statement at approximately 10:20 P.M. on February 12, 1982."

Determination of whether a statement has been voluntarily given is a mixed question of law and fact. *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). On appeal, the unique mixture of law and fact implicit in the determination of whether a confession was voluntarily given or the accused waived his right to counsel prior to giving a statement is reflected in our standard of review. *See Columbe, id.*

On appeal, a trial court's denial of a motion to suppress will not be disturbed if supported by substantial evidence, unless it also appears that the determination of the court was erroneously premised. *See Rodriguez v. State,* 91 N.M. 700, 580 P.2d 126 (1978); *United States v. Brown,* 557 F.2d 541 (6th Cir.1977). The appropriate standard for review on appeal is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party; all reasonable inferences in support of the court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded. *Texas Nat. Theaters, Inc. v. City of Albuquerque,* 97 N.M. 282, 639 P.2d 569 (1982); *State v. Bloom,* 90 N.M. 192, 561 P.2d 465 (1977); *see United States v. Brown, supra.* Resolution of factual conflicts, credibility and weight of evidence is particularly a matter within the province of the trier of fact. *State v. Landlee,* 85 N.M. 449, 513 P.2d 186 (Ct.App.1973). A reviewing court is not, however, bound by a trial court's ruling when predicated upon a mistake of law. *State v. Cline,* 405 A.2d 1192 (R.I.1979). A claim of waiver of an accused's constitutional right to counsel or issues involving the voluntariness of a confession require an appellate court to carefully scrutinize the lower court's ruling to determine whether it was grounded upon substantial evidence and constituted a correct application of the law. *United States v. Brown, supra.* Whether after invoking his right to counsel, defendant initiated further contact with police prior to giving each of his statements and whether he was able to intelligently and knowingly effect a valid waiver of counsel necessarily turn upon resolution of separate factual issues as to each particular statement. *See State v. Gilbert,* 98 N.M. 530, 650 P.2d 814 (1982). Resolution of whether a valid waiver of counsel has occurred depends upon the totality of the circumstances and the particular facts surrounding each case, including consideration of the mental and physical condition, background, experience and conduct of the accused. *State v. Trujillo,* 95 N.M. 535, 624 P.2d 44 (1981); *Culombe, supra.*

*Edwards v. Arizona* stated that when an accused has expressed a desire "to deal with the police only through counsel, [he] is not subject to further police interrogation by authorities until counsel is made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." Once defendant has invoked his right to an attorney, if interrogation continues and a statement is thereafter obtained, the State must meet the "heavy burden" of demonstrating both prongs of a waiver of the right to counsel. *Miranda v. Arizona, supra; Greene I, supra; State v. Dominguez,* 97 N.M. 592, 642 P.2d 195 (Ct.App.), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982).

On appeal, there is a presumption against waiver of a constitutional right. *Greene II, supra.* The rule of presumptive inadmissibility of subsequent inculpatory statements is grounded upon the basis that an inability to protect a right at one stage of a proceeding may make its invocation useless at a later stage. *State v. Poller,* 93 N.M. 257, 599 P.2d 1054 (Ct.App.), *cert. denied,* 92 N.M. 621, 593 P.2d 62 (1979). In order to effectuate a valid waiver, the State is not limited to instances where the waiver was reduced to writing and signed

by the defendant, *State v. Smith,* 80 N.M. 126, 452 P.2d 195 (Ct.App.1969); however, the burden of proof to establish a waiver of a constitutional right rests upon the State. *Greene I, supra; State v. Briggs,* 81 N.M. 581, 469 P.2d 730 (Ct.App.1970). The waiver test depends not upon the giving of any particular litany of phrases or admonishments but rather upon whether the record indicates a defendant's clear manifestation by words and actions of a voluntary choice. *Smith, supra.*

■ The trial court's order denying defendant's motion to suppress physical evidence obtained on February 12, 1982, was premised upon a finding that "[T]here was no violation of defendant's constitutional rights in the seizure of physical evidence on February 12, 1982, *in that no evidence to be utilized in the case was taken . . . .*" (Emphasis supplied.) This finding expressly conflicts with Conclusion No. 1, which denies defendant's motion to suppress physical evidence taken on February 12, 1982. Contrary to the court's finding, physical evidence was in fact obtained as a direct result of the several statements given by defendant.

■ The court's order refusing to suppress defendant's several oral statements does not indicate upon what basis the court denied the motion. No express findings were made by the court below concerning the factual issue as to waiver of counsel. When an accused requests an attorney after *Miranda* warnings are given, in order to establish the admissibility of a subsequently obtained statement, the burden rests upon the State to fulfill both requirements of the two-pronged test set forth in *Edwards v. Arizona.* As discussed in *Edwards,* the voluntariness of a statement, on one hand, and a knowing and intelligent waiver of counsel on the other, involve two separate inquiries. Proof of a knowing, voluntary and intelligent waiver of counsel also requires establishing the three separate factors, including a showing that there has been advisement of the *Miranda* rights and evidence that after invoking his right to counsel the accused himself initiated further communica-

tion with the police. In this case, in considering the motion to suppress, the trial court did not specifically address the latter aspect. In order to determine the question as to waiver of counsel in the context of each separate statement given by the defendant, we remand for determination of this issue by the trial court. *See Johnson v. State,* 631 P.2d 508 (Alaska Ct.App.1981).

The order of the trial court dated October 1, 1982, denying defendant's motion to suppress the physical evidence and statements given by him on February 12, 1982, is reversed, and the cause remanded for additional findings and conclusions, redetermination of the issue of waiver, and such other proceedings as may be appropriate, consistent with the rules of law set forth herein.

IT IS SO ORDERED.

WALTERS, C.J., and BIVINS, J., concur.