This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41514

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

CRISTOBAL SANCHEZ,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
T. Glenn Ellington, District Court Judge

Raúl Torrez, Attorney General
Santa Fe, NM
Christa Street, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant appeals his conviction for driving while intoxicated (DWI) (second offense), challenging the district court's denial of his motion to suppress. Defendant argues that the district court erred in concluding the officer who stopped him had reasonable suspicion that Defendant had failed to maintain his lane, contrary to NMSA 1978, Section 66-7-317(A) (1978). We affirm.

**BACKGROUND**

**{2}** The following facts are not contested. Defendant was stopped by a New Mexico State Police Officer for failing to maintain a lane, in violation of Section 66-7-317(A). The stop led to a DWI investigation and related charges. Defendant filed a motion to suppress, arguing that his vehicle's minor deviations onto the striped white line separating the two southbound lanes did not give the officer reasonable suspicion to conduct the stop.

**{3}** At the hearing on Defendant's motion, the district court heard testimony from the officer who stopped Defendant. The officer testified that he was patrolling State Road 599 near mile marker 10. A median separates the highway's northbound and southbound lanes, both of which have two lanes separated by a striped white line. The officer was travelling southbound in the left lane when he first observed a silver van in front of him travelling southbound in the right lane. His attention was drawn to the van when he observed it driving onto the striped line, or slightly over the striped line, on three occasions in a period of approximately forty seconds. The officer observed that it did not appear that the driver was attempting to change lanes. Both vehicles were traveling within the speed limit. There was a slight rise and turn in that section of the highway as it passed by an exit ramp and over another road. There were no objects or other traffic at the time. It was dark, there was no inclement weather, and the road was dry.

**{4}** On cross-examination, the officer agreed that there were occasional stoplights along that section of the highway, and Defendant was travelling on an overpass for a short period of time prior to being stopped. The officer testified that there was nothing about the left curve in the road near the overpass that impacted the officer's ability to stay within his lane, or that would have made it difficult for Defendant to stay within his lane.

**{5}** After hearing testimony from the officer, watching the dashcam video of the stop, and hearing argument from the parties, the district court denied Defendant's motion. Defendant pleaded guilty to DWI (second offense), but reserved the right to appeal the denial of the motion to suppress. Defendant now appeals.

**DISCUSSION**

**{6}** Defendant's principal argument on appeal is that the district court incorrectly interpreted Section 66-7-317 when evaluating whether the officer had reasonable suspicion to initiate a traffic stop for failing to maintain lane. Defendant also argues that the facts do not support a finding of reasonable suspicion under the circumstances here.

**{7}** "Because suppression of evidence is a mixed question of law and fact, we apply a two-part review to the district court's denial of the motion to suppress." *State v. Scharff*, 2012-NMCA-087, ¶ 8, 284 P.3d 447. "[W]e review the facts in the light most

favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. Defendant does not dispute the district court's factual findings, and in this opinion, we focus on the district court's application of law to the facts, which we review de novo. *See State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579. "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *Id.* (internal quotation marks and citation omitted). "An officer obtains reasonable suspicion when the officer becomes aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity had occurred or was occurring." *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186 (internal quotation marks and citation omitted).

**I.      Reasonable Suspicion of Failure to Maintain Lane Is Evaluated by Looking at the Totality of the Circumstances**

**{8}**      Failure to maintain a lane is defined in Section 66-7-317(A) as follows:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

A.      a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Violation of this statute is a penalty assessment misdemeanor. NMSA 1978, § 66-8-116(A) (2019, amended 2023).

**{9}**      This Court has held that it is not a strict per se violation of the statute to touch or cross a lane line. *See State v. Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 18, 404 P.3d 782 (holding that "the plain language of Section 66-7-317(A)—including the 'as nearly as practicable' qualification—recognizes and contemplates circumstances under which a driver may momentarily leave [their] lane of travel without violating the statute"). This is not to say that a "single instance of crossing [a lane] line can never violate the statute." *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 19 (internal quotation marks and citation omitted). Rather, the trial court must evaluate the totality of the circumstances "to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway." *Id.* ¶ 19 (internal quotation marks and citation omitted). This analysis takes into account such factors as the weather conditions, road features, "or other circumstances that could have affected or interfered with a driver's ability to keep [their] vehicle in a single lane." *Id.*

**{10}**      In addition, the statute prohibits a driver from moving from their lane without first "ascertain[ing]" that such movement can be made with safety." *See* § 66-7-317(A). The parties characterize this as a second element. Regardless of whether the parties'

characterization is accurate, this Court has indicated that safety considerations are also among the totality of circumstances that must be considered when determining whether a driver maintained their lane "as nearly as practicable." *See Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 17 (construing the plain language of the statutory phrase "as nearly as practicable" to mean that a driver must "maintain his or her vehicle in a single lane— as closely as possible—by utilizing good judgment *and taking into account the safety considerations of a particular situation*" (emphasis added)). When trial courts assess whether reasonable suspicion exists to support a stop for violation of Section 66-7-317(A), they must consider whether the driver's act of touching or crossing a lane line was "feasibly and safely executed under the totality of the circumstances." *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 22 (concluding that the evidence supported the district court's ruling that the defendant "safely maintained her lane of travel as nearly as practicable" where she touched the left-hand lane line while "passing two semi-trucks in the left-hand passing lane, common driving experience advises leaving as much room as possible for safety when passing a semi-truck, and the entirety of the incident consisted of the vehicle's single, brief touching of the left-hand yellow shoulder line while passing the second semi-truck").

## II.     The District Court Applied the Correct Legal Standard

**{11}**     Turning to the stop in this case, Defendant first argues that the district court applied an incorrect standard for evaluating "practicability." Defendant contends that the district court found that touching the striped dividing line was a per se violation of the statute, and that the district court evaluated whether it was "impossible" for Defendant to maintain his lane rather than whether it was merely "impracticable," as required by Section 66-7-317(A). We disagree with Defendant's characterization of the district court's order. The district court correctly examined the totality of the circumstances surrounding the movement of Defendant's vehicle and determined that the officer had reasonable suspicion to stop Defendant for violating Section 66-7-317(A).

**{12}**     The district court found that over a span of approximately thirty-five seconds, Defendant's van travelled on the striped line in the middle of the road on three occasions. The court found that the van was travelling within the posted speed limit, and that there were no safety factors, objects, or other conditions impacting the roadway. The court also found that it was a clear night, that there was no inclement weather, and the roadway was dry. The court noted that a portion of the dashcam video showed an upward rise in the roadway from an overpass and an off-ramp, but that there were no other road conditions or safety conditions that the van was attempting to address. The court concluded that based on the evidence presented a reasonable person would find that the van had left its lane.

**{13}**     To the extent Defendant contends that the district court was presented with evidence of objective considerations that made it impractical for him to maintain his lane and improperly discounted such evidence, Defendant appears to invite this Court to reweigh the evidence. This we will not do. *See State v Boeglin,* 1983-NMCA-075, ¶ 22, 100 N.M. 127, 666 P.2d 1274 (stating that a reviewing court will not disturb a lower

court's denial of motion to suppress if supported by substantial evidence because "[r]esolution of factual conflicts, credibility, and weight of evidence is particularly a matter within the province of the trier of fact"). The district court properly considered Defendant's argument that the highway "goes up and has a very gradual turn to the left" and concluded that "[t]he first, second, and third time Defendant's vehicle drove on the center line is visible in the video, and there appears to be no other road conditions, weather conditions, or safety factors that the vehicle was attempting to avoid or address." In short, the district court applied the correct legal standard as set forth in *Siqueiros-Valenzuela*. *See* 2017-NMCA-074, ¶ 19. The court looked to "the particular circumstances present during the incident in question" and found that there were no circumstances observable to the officer that would cause Defendant to depart from his lane of travel. *See id.*

**{14}** For all of these reasons, the district court determined that the officer had reasonable suspicion to believe Defendant had failed to drive his vehicle "as nearly as practicable within a single lane." *See id.* ¶ 18; Section 66-7-317(A). We agree and hold that the district court did not err in this regard.

### III. Defendant's Arguments About Safety Do Not Establish Reversible Error

**{15}** Defendant also contends the State did not offer any evidence that his driving presented an actual safety concern, specifically because (1) there was no other traffic on the road, and (2) there was nothing to indicate that Defendant failed to "first ascertain" whether touching the striped white line could be done safely. We are not persuaded by these arguments.

**{16}** To Defendant's first point, this Court established in *State v. Salas*, 2014-NMCA-043, ¶ 14, 321 P.3d 965, that a direct impact on other drivers is not strictly required. There, this Court looked at the circumstances surrounding the defendant's driving and concluded that "[w]hile there may not have been other traffic at the particular instance of [the d]efendant's erratic driving," there were safety concerns presented for vehicles travelling in the opposite direction and for the officers travelling behind the defendant's vehicle. *Id.* In particular, the officers were concerned that "any overcorrecting might cause a rollover accident" and were additionally concerned that the defendant's "erratic driving indicated possible impairment," given that the officers could not perceive any justification for the defendant's driving activity. *Id.* Such erratic driving "can well present a concern in the judgment of an experienced police officer about safety and danger to northbound or southbound traffic were [the d]efendant to have been permitted to continue his travels." *Id.* ¶ 15.

**{17}** As to Defendant's second point, this Court has looked at the circumstantial evidence of the defendant's driving as evidence of whether the defendant "ascertained that such movement can be made with safety." In *Salas*, this Court noted that there was no evidence that the defendant "was conscious of or focused on safety or risk, or that his condition was such that he would not continue to drive erratically." *Id.* Based on the driving itself, the Court concluded that "[a] reasonable inference could be drawn that

[the d]efendant drove in a manner that would indicate that he was not concerned about possible vehicular travel coming from behind or northbound." *Id.* By contrast, the Court in *Siqueiros-Valenzuela* noted that the district court could "reasonably infer that [d]efendant did in fact ascertain the safety of her movement by driving to the far left side of her lane while passing the semi-trucks—it provided a safer distance than driving in the middle of her lane during this passing maneuver." 2017-NMCA-074, ¶ 24.

{18}　In this case, the State presented evidence that Defendant drove onto the striped lane line and returned to his lane of travel three times in approximately a forty-second period. Like in *Salas*, the district court concluded that there were no other conditions or circumstances, such as objects in the road, that would have justified Defendant's driving behavior under the circumstances. Consequently, although there was no testimony regarding other drivers on the road, we are persuaded that Defendant's driving posed a risk to the safety of other drivers if his driving behavior had been allowed to continue. *See id.* ¶ 15. Likewise, there was nothing in the record to indicate that "Defendant ascertained that his movements could be made with safety, that he was conscious of or focused on safety or risk, or that his condition was such that he would not continue to drive" in the same manner. *See id.*

{19}　The State presented sufficient evidence to demonstrate that Defendant's driving behavior posed a safety concern. The district court properly considered the totality of the circumstances, including the manner in which Defendant was driving and the absence of circumstances to justify his movements, and determined that the officer lawfully stopped Defendant based on reasonable suspicion that Defendant had violated Section 66-7-317(A). We agree and hold that the district court did not err in denying Defendant's motion to suppress.

**CONCLUSION**

{20}　We affirm.

{21}　**IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**