[No. 20992. Department Two. — September 26, 1893.]

PEOPLE, RESPONDENT, *v.* GEORGE GREEN, APPEL-
LANT.

CRIMINAL LAW — TRIAL FOR FELONY — ORDER LIMITING ARGUMENT OF COUNSEL —
ABUSE OF DISCRETION — CONSTITUTIONAL RIGHT — NEW TRIAL. — An order limit-
ing the counsel for a defendant charged with felony to one hour within which
to sum up and argue the case to the jury, is an abuse of discretion, where it
appears that the trial occupied five days, and that the time was insufficient for
the full presentation of the case to the jury on behalf of the defendant, and
where the uncontradicted affidavits of counsel and the state of the evidence
both show that the prisoner was deprived by the limitation of the constitutional
right to be fully heard in his defense by counsel, a new trial must be granted.

ID. — ADMINISTERING OATH TO CHINESE WITNESS — STATUTE NOT MANDATORY — DIS-
CRETION — SHOWING REQUIRED. — Sections 2095 and 2096 of the Code of Civil
Procedure are not mandatory, but merely permissive at the discretion of the
court to adopt a peculiar mode of swearing a witness who regards such mode
as more solemn or obligatory, or according to the peculiar ceremonies of his
religion; and in order to show an abuse of the discretionary power conferred,
in refusing to administer a peculiar oath to a Chinese witness, it must be made
to appear that the court was informed that the witness regarded some other
form more obligatory than the form adopted in this state, and perhaps that he
did not consider the latter at all obligatory.

APPEAL from a judgment of the Superior Court of Fresno
County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Frank H. Short, G. C. Freeman,* and *W. H. La Rue,* for
Appellant.

*Attorney General W. H. H. Hart,* for Respondent.

The COURT. — By information the defendant and Albert
Larsen were jointly accused of the crime of robbery. They
demanded separate trials, and the defendant was first separately
tried, convicted, and sentenced to imprisonment in the state
prison for the term of his natural life. He appeals from the
judgment, and from an order denying his motion for a new
trial.

The information charges that defendant robbed one You
Kam, a Chinaman, of one hundred and seventy-four dollars
and a gold watch, the property of one San Kee, in the county
of Fresno, on the twenty-seventh day of April, 1892.

Counsel for appellant contend that the court committed sev-
eral errors prejudicial to the rights of the defendant, the most
important of which will be first considered.

It is claimed that the court erred in limiting counsel for defendant to one hour in which to sum up the evidence and argue the case to the jury.

The trial of the case occupied five days, three of which, at least, were devoted to hearing the testimony of twenty-four witnesses. When the evidence had been closed and counsel were ready to proceed with their addresses to the jury, the court said to them: "I think two counsel will be enough to argue the case, and an hour on a side." Mr. Freeman, of counsel for defendant, said: "We object to being limited." The Court: "Give him the benefit of his exception, limit you to an hour on a side, gentlemen." Mr. Freeman: "Well, we except."

Defendant was represented by two counselors, Messrs. Freeman and La Rue, by whose affidavits it appears that the testimony of the twenty-four witnesses examined at the trial consisted of over ninety thousand words, besides the testimony of witnesses taken at the preliminary examination of defendant and others before the magistrate, which was admitted at the trial by stipulation, consisting of over twelve thousand words; that only Mr. Freeman addressed the jury on the part of the defendant, and consumed the hour to which defendant's counsel were limited, and closed his address at the expiration thereof; that, by reason of the limitation, counsel for defendant were prevented from presenting several important points to the jury, which they deemed material for the defense, and which they would have considered it their duty to present, and would have presented, but for the limitation of time to which they were subjected by the order of the court; that it was impossible fully and properly to argue the case to the jury for the defendant within one hour; and that they believe the rights of the defendant were prejudiced by the limitation.

The evidence contained in the bill of exceptions condensed, as most of it appears to be, into the form of a narrative, occupies one hundred and fifty-eight pages of the transcript. Much of it is circumstantial, and all contradictory as to nearly all the material facts. The principal questions as to which the evidence was contradictory and conflicting were: 1. Was the defendant identified as one of the robbers by the three Chinamen who were the only witnesses that testified in chief to such identity?

2. Was the defendant, at the time of the robbery, at a place five miles distant from the place of the robbery? 3. Was it probable that the robbery had been committed by Cliff Ragan, John Fry, and George W. Cain? In the attempted solution of these main questions numerous subsidiary questions arose as to which the evidence was conflicting. As to the identity of the defendant, it was claimed that the testimony of the Chinamen was inconsistent with what they had said the day after the robbery, and inconsistent with their testimony at the preliminary examinations of defendant and others whom they had accused of the crime. As to the alleged *alibi* of the defendant, four witnesses, besides the defendant, testified positively that defendant was at a place five miles distant from the place of the robbery at the time it was committed. This testimony of five white witnesses on the part of the defendant was irreconcilably inconsistent with that of the three Chinamen who had testified in chief on the part of the people. To rebut the evidence of the *alibi*, the people called from the jail Cliff Ragan, who was imprisoned on a charge of having participated in the same robbery, and also on a charge of another crime distinct from the robbery, who testified that he and the defendant committed the robbery for which defendant was being tried, and that he confessed the crime at the instance of the district attorney, who had told him that it would be easier on him if he told all he knew about it and that he might get off with two or three years, though he (the district attorney) said he had no control over the amount of punishment, which depended entirely upon the court. He further testified that he was about twenty years of age and had served one term in the state prison for a felony of which he was convicted in 1888.

As to the contention of defendant, that the robbery was committed by Cliff Ragan, John Doe Fry, and George Cain, it appeared that some days after the complaint before the magistrate was made against defendant and Larsen by the Chinamen, the same Chinamen, or some one of them, made like complaints against Ragan, Fry, and Cain, and that warrants for the arrest of these were issued, though Fry and Cain were not arrested. It also appeared that the watch which had been taken from the Chinaman at the time of the robbery was found in the posses-

sion of Cain soon after the robbery. This was explained by Cain in his testimony, by stating that he had received the watch from Ragan and delivered it to the constable for the purpose of detecting the guilt of Ragan, whose confidence he had solicited and obtained by false pretenses and then betrayed.

The purpose of the foregoing outlined skeleton is not to indicate an opinion as to the merits of the case, except so far as necessary to establish a basis upon which to estimate the time to which counsel were entitled in which to sum up and argue the case to the jury on behalf of the defendant, and thereby to test the truth of the affidavits of counsel, to the effect that the time to which they were limited was insufficient.

That a defendant being tried on a charge of felony has a constitutional right to be fully heard in his defense by counsel, which it is not within the discretionary power of the court to deny or abridge, is not to be questioned. Yet it has been found to be impossible to formulate any abstract rule or definition by which the extent of this right may be ascertained in all cases. It is also well settled that the court has a discretionary power to restrain what has been termed, perhaps, not quite appropriately, an *abuse* of this right, by which is meant very little more than that counsel may be restricted to a discussion of matters relevant to the case and restrained from wasting the time of the court by useless repetition. But it must always be a difficult as well as a delicate matter, in a case like this, for the court to determine in advance what limitation should be imposed upon counsel against their consent ( *Williams* v. *State,* 60 Ga. 369; 27 Am. Rep. 412); and, as was said in the case of *People* v. *Keenan,* 13 Cal. 581: "If it (the court) imposes a limitation of time upon counsel against their consent, this must be done at the risk of a new trial if it be shown by uncontradicted affidavits that the prisoner was deprived by the limitation of the opportunity of a full defense; for this is his constitutional right, without which he cannot be convicted." And in the same case it was said: "It is impossible to deny that, if the constitutional privilege of being heard by counsel be allowed at all, it must be so admitted as that the prisoner may have the benefit of a complete discussion of all the matters of law and evidence embraced by the case." In that case it appeared that the evidence

was circumstantial and voluminous, consisting of the testimony of fourteen witnesses (ten less than in this case), and that the two counsel for defendant were limited to three hours—one hour and thirty minutes being allowed to each. Yet, for the error of thus limiting counsel, the judgment was reversed. The affidavits of counsel in that case as to the necessity of more time than was allowed are substantially the same as in this case. In that case, however, one of defendant's counsel, upon the expiration of the time allowed him, asked for further time; and it is claimed that this difference distinguishes that case from the case at bar. It is not perceived, however, that a repetition of counsel's objection and exception would strengthen their point. The court, without consulting them, limited them to one hour. They duly objected to being limited. The court peremptorily repeated the order. They excepted, and submitted to the order, and obeyed it, without begging for a modification of it. In the case of *Dille* v. *State*, 34 Ohio St. 617; 32 Am. Rep. 395, wherein a like exception had been taken to an order of the trial court, limiting counsel to thirty minutes, the appellate court said: "Counsel sufficiently indicated that, in their judgment, the thirty minutes allowed for argument was insufficient by promptly protesting against it, and the defendant saved his right by excepting to the limitation at the time it was imposed." In this Ohio case the defendant had been convicted of burglary and larceny on the testimony of seven witnesses for the state, four witnesses testifying on the part of the defendant, and only half a day was occupied in taking all the testimony. There were no affidavits of counsel. The bill of exceptions contained merely a statement of the evidence, the order of the court limiting counsel to thirty minutes, and the objection and exception by defendant. From the nature of the evidence alone it was determined that the order limiting counsel was in excess of the discretionary power of the trial court. Among other things the court said: "The court has no discretionary power over the *right* itself, for it cannot be denied. And hence it has no right to prevent the accused from being heard by counsel, even if the evidence against him be clear, unimpeached, and conclusive in the opinion of the court. But the *exercise* of the right is subject to judicial control to

the extent that is necessary to prevent the abuse of it. . . . .
There were seven witnesses for the state and four for the de-
fendant.    Half a day was occupied in the taking of the testi-
mony.    It was entirely circumstantial, and there was serious
conflict in it.    Under these circumstances, when the defendant's
liberty was at stake, and an ignominious punishment threaten-
ing him, he was entitled to be heard, in a reasonable manner,
by both counsel whom he had employed for his defense."

Several cases in which orders limiting counsel have been
affirmed are cited by counsel for the people, but they are all in
harmony with the foregoing as to the right of the accused and
the limitations upon the discretionary power of the court.
None of them is a precedent for this case, except, perhaps, *State*
v. *Collins*, 70 N. C. 241; 16 Am. Rep. 771, which, it is said,
has been reversed by an act of the legislature of that state pro-
viding that: "Any attorney appearing in any civil or crimi-
nal action shall be entitled to address the court or jury for such
a space of time as, in his opinion, may be necessary for the
proper development and presentation of his case."

Under the circumstances of this case we think the order
limiting counsel for defendant to one hour exceeded the discre-
tionary power of the court.    Aside from the affidavits of coun-
sel, it appears from the bill of exceptions that the evidence was
voluminous, partly circumstantial, and extremely conflicting;
so that its effect upon the three leading issues, to say nothing
of incidental questions, was fairly debatable.    As was justly
said by Mr. Justice Baldwin, in *People* v. *Keenan*, 13 Cal. 581:
" It is very difficult for a judge to determine what effect a given
line of argument may have upon a jury, or some one of them, or
what period may be necessary to enable counsel to present, in
the aspect deemed by them important, the case of their client.
The minds of men are so differently constituted that one advo-
cate may require much more for the statement and elaboration
of his views than another."

As only one of the other points made by appellant will prob-
ably arise on a new trial, that one only need be considered.    It
is that the court erred in refusing to administer to the Chinese
witnesses a form of oath other than the usual form, as author-
ized by sections 2095 and 2096 of the Code of Civil Procedure.

In answer to this, it is enough to say that it does not appear that the court was informed that those witnesses had "a peculiar mode of swearing . . . . more solemn or obligatory" than the usual form; nor that they believed "in any other than the Christian religion." And it may be added that those sections of the code are not mandatory, but merely permissive, at the discretion of the court, under the circumstances therein stated. To show an abuse of the discretionary power conferred, it should be made to appear, at least, that the witness regarded some other form of oath more obligatory than the form usually adopted in this state; and perhaps that he did not consider the latter at all obligatory.

The judgment and order are reversed, and the cause remanded for a new trial.

McFARLAND, J., concurring. — I feel compelled, under the authorities, to concur with my associates in reversing the judgment; but I do so with great reluctance and some doubt. The manner of *nisi prius* courts in conducting trials now-a-days is not generally subject to the criticism of too great curtailment of the privileges of attorneys; on the other hand, its seems to me that attorneys are frequently given too much latitude to conduct trials according to their own pleasure. The presiding judge should always hold the reins, and should apply the curb when occasion requires it. Neither should the time given for argument always be guaged by the length of the trial; for tedious and useless prolongations of examinations and cross-examinations of witnesses, and needlessly long discussions of objections to evidence, frequently cause a trial to drag through a couple of weeks when it should have been concluded in two or three days. In the case at bar, however, it seems that there was a good deal of material and proper evidence which was conflicting as to several matters important to the case and necessary for the jury to be sure about; and under these circumstances, one hour was hardly sufficient time for appellant's counsel to properly present his views. I hope, however, that this decision will not give trial courts the notion that they can prescribe *no* reasonable limits in point of time to the arguments of counsel.