701 P.2d 374

**STATE of New Mexico,
Plaintiff-Appellee,**

**v.**

**Mark Douglas FISH,
Defendant-Appellant.**

**No. 6000.**

Court of Appeals of New Mexico.

April 9, 1985.

Certiorari Denied May 31, 1985.

Mary Jo Snyder, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Charles D. Noland, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Convicted of attempted second degree murder, criminal sexual penetration (CSP) in the second degree, while armed with a deadly weapon, to wit: a knife, and kidnapping, defendant appeals. The jury acquitted defendant of armed robbery. The state had dismissed prior to trial a count for aggravated battery. Defendant raises nine issues in his docketing statement. It came to the attention of this court that the record on appeal was incomplete, and after holding hearings to determine if the record could be reconstructed, we reversed because of an insufficient record and remanded for a new trial. The supreme court granted certiorari, *State v. Fish*, 101 N.M. 329, 681 P.2d 1106 (1984), and reversed this court, holding the record was sufficient for review and also deciding one of defendant's issues. The supreme court decided that evidence of the victim's prior sexual activity was inadmissible, and remanded to this court to address the remaining issues.

In his brief defendant raises the following five issues:

1. Whether the court erred in refusing defendant's requested instructions on CSP in the third degree and on false imprisonment.

2. Whether the court abused its discretion in allowing only thirty minutes for closing argument for each side.

3. Whether the court erred in responding to a jury request made during deliberations by giving an additional instruction defining the term "hold for service."

4. Whether the verdict of guilty of kidnapping is supported by the evidence.

5. Whether the court erred in failing to grant a mistrial upon the prosecution's allegations of recent fabrication by a defense witness, after the prosecutor agreed not to raise the issue.

Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976).

We hold the court erred in refusing to give defendant's requested instructions covering third degree CSP and false imprisonment. Because a new trial is required on second degree CSP and the kidnapping counts, we discuss the remaining issues since they may arise on retrial. We also discuss those issues as they bear on the attempted second degree murder conviction. Because our disposition does not affect the attempted second degree murder conviction, we affirm on that count.

## FACTS

That defendant and the victim had sexual intercourse is undisputed. Defendant admitted it, but claimed it was consensual. The victim told a different story.

The victim and defendant were friends and lived in the same apartment complex. The evening before the alleged rape, defendant and the victim had gone out for a drink and returned to the victim's apartment, where defendant slept. Defendant testified that they had sex; the victim denied it. Defendant lived in the apartment below with his parents, and defendant's sister and her husband lived in the apartment adjacent to the victim.

The next day, January 23, 1982, defendant helped the victim paint her apartment. Afterwards they went to the Amigo Bank

to withdraw $30 from the victim's account, which she then gave to defendant. He characterized this as payment for painting; she said it was a loan.

That evening defendant returned to the victim's apartment. According to the victim, while she was changing clothes defendant raped her at knife point. He then tied her arms with her brassiere and a piece of rope and tried to drown her in the bathtub. During the struggle the victim chipped her teeth. She convinced defendant not to kill her, and to cut the bindings. Later the victim demonstrated to defendant how to operate her Amigo card. Defendant accused her of lying about how to use the card. He then drove the victim to the Amigo Bank, where she withdrew $50, which defendant took from her. He then drove her home, requesting a two-hour head start before she reported the incidents.

While admitting to having sex, which he claimed was consensual, defendant denied any of the other acts other than going to the Amigo Bank to get money, which defendant claimed was a loan. Defendant's theory was that the victim made up the story to get even because of unrequited love. He rejected the victim for another woman. Defendant claimed the victim made up the story and used details strikingly similar to an account of a rape of defendant's fiancee several weeks earlier by an unknown assailant, which the fiancee recounted to the victim.

## 1. Refusal of tendered instructions.

Defendant tendered Uniform Jury Instructions, Criminal covering CSP in the third degree and false imprisonment as lesser included offenses, *see* NMSA 1978, UJI Crim. 50.01, 9.43 and 4.00 (Repl.Pamp. 1982), on the basis that the evidence supported these lesser included offenses. The court denied the request.

### (a) Third degree CSP.

CSP in the second degree, NMSA 1978, Section 30–9–11(B) (Repl.Pamp.1984) lists five aggravating factors, two of which may have been relied on by the state in this case: criminal sexual penetration perpetrated "(4) in the commission of any other felony"; or "(5) when the perpetrator is armed with a deadly weapon." Only the latter is at issue on appeal. CSP in the third degree, distinguished from CSP in the second degree by the absence of any of the five factors, "consists of all criminal sexual penetration perpetrated through the use of force or coercion." Section 30–9–11(C).

Defendant points out that although the victim described the knife as a plastic handled steak knife, it was never introduced into evidence or identified as one of her steak knives. No knife was found on defendant or in his car. Defendant denied ever owning any kind of knife. No cuts were inflicted or claimed to be inflicted on the victim during the rape. Thus, based on all the evidence, defendant argues that the jury, even if it believed a rape had occurred, could have found that defendant forced himself on the victim through the use of force or coercion as opposed to use of a deadly weapon. Without an instruction on third degree CSP, the jury could not, however, have found defendant guilty of that lesser included offense.

In making this argument defendant says that it was within the province of the jury to determine the credibility of the witnesses and to resolve all conflicts, citing *State v. Casteneda*, 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982). He makes the point that the jury was entitled to believe the victim as to the rape, but disbelieve her as to the use of a deadly weapon in its perpetration. This is especially true, says defendant, because the jury in this case, by finding defendant not guilty of the armed robbery charge, had to disbelieve the victim in part, because she testified that defendant forced her to go with him at knife point to the Amigo Bank and that he had the knife in the car.

■ Defendant recognizes that he faces a precedential obstacle in *State v. Romero*, 94 N.M. 22, 606 P.2d 1116 (Ct.App.1980). In that case, as here, the defendant re-

quested a CSP third degree instruction on a CSP second degree count, which the court refused. In *Romero* the victim maintained that defendant forced her to comply by threatening her with a knife. The defendant claimed the victim consented to sexual intercourse. To permit an instruction on a lesser included offense, there must be evidence tending to establish the lesser offense. *Id. See also State v. Vigil,* 86 N.M. 388, 524 P.2d 1004 (Ct.App.1974); *State v. Alderete,* 91 N.M. 373, 574 P.2d 592 (Ct.App.1977). In the present case, evidence that the victim engaged in sexual intercourse as a result of force or coercion tended to establish that the lesser offense, third degree CSP, occurred. Second, to permit an instruction on a lesser included offense, there must be some view of the evidence which could sustain a finding that the lesser offense was the highest degree of the crime committed. *Romero; State v. Sutherland,* 100 N.M. 591, 673 P.2d 1324 (Ct.App.1983). In the present case, a conviction for the higher crime, second degree CSP, must rest on the conclusion that, in addition to using force or coercion, defendant was armed with a knife. No knife was ever found, however, and the victim was not cut. Furthermore, defendant testified that he did not have a knife or even own one.

■ On the basis of the evidence, the jury could have found that, if defendant raped the victim, he did so while unarmed. Therefore, the evidence would sustain a view that third degree CSP was the highest degree of the crime that occurred. To the extent that *Romero* applied the law to prohibit such an instruction on the existing facts, it should not be followed. *See State v. Romero* (Sutin, J., dissenting).

We hold it was error to have refused the tendered instructions dealing with third degree CSP. The verdict as to second degree CSP is reversed.

**(b) False imprisonment.**

■ False imprisonment is the intentional confining or restraining of another without that person's consent and with the knowledge on the part of the one restraining that he or she has no authority to confine or restrain. NMSA 1978, § 30-4-3 (Repl.Pamp.1984). False imprisonment is a lesser included offense necessarily included in kidnapping by holding to service. The distinction between the two offenses is whether the defendant intended to hold the victim to service against her will. *State v. Armijo,* 90 N.M. 614, 566 P.2d 1152 (Ct. App.1977).

Defendant was indicted for kidnapping with the intent to hold the victim to service under NMSA 1978, Section 30-4-1 (Repl. Pamp.1984). The source of that charge is either the alleged rape, or the alleged robbery. Defendant's argument addresses only the robbery—that is, he cites evidence that would support a lesser offense instruction for the robbery basis of the kidnapping charge, and not for the CSP basis of the kidnapping charge. The court is limited to the argument made by defendant in his brief; thus, we address only the robbery basis of the kidnapping charge.

Defendant argues that there was evidence introduced at trial to indicate that he lacked intent to hold the victim to service. He claims that there was evidence that he had no purpose for taking victim along to the Amigo Bank. He already knew how to operate the Amigo card, and, therefore, had no purpose in taking the victim unless it was to prevent her from calling the police. In any event, defendant urges that there was evidence to support a finding of guilty to false imprisonment because of the lack of the requisite intent to hold for service after the two left to go to the bank.

■ Based on the same reasoning discussed under point 1(a), we hold it error not to give the tendered instructions on the lesser included offense of false imprisonment. Even if the jury rejected defendant's story of no force or deception, it could have believed that he did not intend to hold the victim to service when he made her go with him to the bank.

■ Because we cannot tell whether the jury convicted defendant for kidnapping on

the basis of the CSP, as opposed to the trip to the bank, *see Gerety v. Demers*, 86 N.M. 141, 520 P.2d 869 (1974); *Perfetti v. McGhan Medical*, 99 N.M. 645, 662 P.2d 646 (Ct.App.1983), the verdict as to kidnapping must be reversed and the case remanded for new trial to allow the tendered instructions on false imprisonment.

## 2. The thirty minute summation.

The trial court limited each side to thirty minutes for closing argument. Both sides objected. Defense counsel alerted the court that given the time of the day, he would not commence to argue until approximately 5:30, and that the jury would be extremely tired after hearing testimony all day. He requested that oral argument be made the following morning. The objections and request to delay were denied, and counsel proceeded to argue. The state, according to defendant, used up approximately twenty-nine and one-half minutes in its opening and fifteen minutes on rebuttal. Defendant stayed within the thirty minute limitation.

The propriety of court limitation on time allowed for final summation in a criminal trial is a question of first impression in New Mexico. For a collection of cases dealing with the problem in criminal trials, see Annot., 6 A.L.R.3d 604 (1966); for discussion of the same question in civil trials, see Annot., 3 A.L.R.3d 1341 (1965). While NMSA 1978, Crim.P. Rule 40 (Repl.Pamp. 1980) provides for final argument in the order of trial, it does not prescribe any time frame or limitation.

From the cases discussed in 6 A.L.R.3d 604 and other sources, we can set forth general principles, as to which the parties appear to be in accord. An accused has the constitutional right to appear and defend himself in person, or by counsel. N.M. Const. art. II, § 14 (Cum.Supp.1984); *People v. Green*, 99 Cal. 564, 34 P. 231 (1893). Final summation is basic to the right of a defendant in a criminal trial to make his defense. *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). This right is not, however, without limitation. It is generally recognized that the court may, in its discretion, limit the time consumed by counsel in final argument. This is inherent in the control a court exercises over the business which comes before it. Thus, a court must balance the accused's right to be heard with the power to limit the time occupied.

In determining whether an abuse of discretion has occurred, courts have examined a number of factors, including the length of the trial; number of witnesses; number and complexity of the issues, facts and instructions; and the gravity of the offense. Of course, the determination of abuse must turn on the facts of each case, and other factors may be considered depending on the circumstances. *Cf. In re F.*, 11 Cal.3d 249, 113 Cal.Rptr. 170, 520 P.2d 986 (1974); 6 A.L.R.3d at 609 (denial of opportunity to make a closing argument in a juvenile proceeding required reversal). For this case we look at the above factors to see if an abuse of discretion occurred.

The trial took three days. Twenty witnesses testified: nine for the state and eleven for the defense. The court submitted four counts to the jury: CSP II, kidnapping, attempted first degree murder, and armed robbery. All arose out of the same incident. The issue centered around consent and the credibility of the witnesses. The instructions covered the issues, except for the lesser included offenses of CSP III and false imprisonment, discussed above. The charges involved grave offenses. The court sentenced defendant: nine years with three years suspended on CSP II; the same for kidnapping; three years for attempted murder, second degree. With the first two sentences to run concurrently and the third consecutively, defendant received a net period of incarceration of nine years, plus three years of probation following release.

From our review of the record it appears that defendant's counsel covered all of the issues in his closing summation, except the argument of fabrication by the victim based on the similarity between her details of the rape and the earlier rape of defendant's fiancee by the third party. No re-

quest was made, however, for additional time, and, further, we cannot tell if defense counsel intentionally omitted this contention as a tactical move.

Judicial discretion is abused when it is exercised to an end or purpose not justified by and clearly against reason and evidence so as to produce a ruling or decision that is clearly untenable. *State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct. App.1970). Before an appellate court will interfere, however, the abuse must be clearly shown and must result in a denial of the accused's constitutional right to be heard. We are unable to say that occurred here.

Nevertheless, we caution against overly restrictive time limits for final summation. This is a critical stage. The intricacies of trial do not always lend themselves to a bland matter-of-fact summation of the law and the facts. The skillful lawyer will often have to weave his or her client's theory through a morass of evidence and complex issues before it can be fully understood or appreciated by the jury. Working against unduly restrictive time constraints may make it impossible for even the most experienced to fulfill this important function; the less experienced may falter under the pressure. If the court is to err, it should be on the side of leniency. Liberty interests cannot be measured with a stopwatch.

## 3. The additional instruction during jury deliberations.

The jury received the standard instruction on kidnapping in a rape context, to the effect that "[h]old for service" includes "holding for sexual purposes." NMSA 1978, UJI Crim. 4.04 (Repl.Pamp.1982). During its deliberations, the jury sent a note asking, "What else does 'hold * * * for service' include in kidnapping other than for sexual penetration[?]".

After argument and over defendant's objection, the court instructed the jury that "A general definition of holding for service is simply being made to submit your will to the direction and control of another for the purpose of performing some act."

Defendant argues that the instruction was confusing and unnecessary. We reject the contention that the instruction was confusing. Defendant argues that *State v. Aguirre*, 84 N.M. 376, 503 P.2d 1154 (1972) holds that the term "hold for service" is a readily understandable concept in need of no further definition. Clearly, because the additional instruction was unnecessary, the court would not have erred had it refused to give it. Therefore, the question is whether the court erred in giving the additional instruction.

Defendant further urges that NMSA 1978, Crim.P. Rule 43(a) and (b) (Cum.Supp. 1984) makes clear that additional instructions may be given only if authorized by the UJI Crim. He argues that the only additional authorized instruction is UJI Crim. 4.04.

*State v. Griego*, 90 N.M. 463, 564 P.2d 1345 (Ct.App.1977) holds it is not error to give an unnecessary instruction where (1) the additional instruction is not among those prohibited by the UJI; (2) it does not alter an approved instruction; (3) it does not conflict with an approved instruction; and (4) the additional instruction goes to definitions not covered by the approved instructions.

The instruction here was not prohibited. It did not conflict or alter an approved instruction. And while UJI Crim. 4.04 covers the definition of "hold for service" in a sex abuse case, it does not cover the definition for other type cases. Apparently, the giving of UJI Crim. 4.04 prompted the jury's inquiry.

Defendant's claim that Crim.P. Rule 43(a) and (b) prohibits the giving of unauthorized additional instructions has merit if we disregard cases decided since those portions of the rule came into effect. Case law indicates, however, that the court does not read "authorized" as narrowly as defendant. *See Griego; compare with State v. Marquez*, 96 N.M. 746, 634 P.2d 1298 (Ct.App.1981).

Defendant has not demonstrated that he was prejudiced by an unnecessary and non-erroneous instruction. We hold, therefore, that the trial court did not err in giving the instruction defining "hold to service."

#### 4. Substantial evidence to support kidnapping conviction.

Defendant argues that there is insufficient evidence to show that he held the victim to service during the alleged kidnapping of victim when defendant took her to the Amigo Bank. The gist of his argument is that there is evidence that he did not need to take her along because he knew how to operate the money card. Thus, he had no purpose for taking her.

■ Defendant ignores victim's testimony that defendant thought she was lying when she explained to him the use of the card. The jury could infer from this evidence that, mistrusting victim's instructions, defendant took her along for the purpose of operating the card. This court does not weigh the evidence on review; resolution of factual conflicts, credibility, and weight of the evidence is particularly a matter within the province of the trier of fact. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). Defendant's argument lacks merit. The verdict is supported by the evidence. This does not, however, resolve the issue raised under 1(b) above. As pointed out under that discussion, the kidnapping count must be reversed for new trial because of the failure to give the properly tendered instructions on false imprisonment.

#### 5. Refusal to grant mistrial.

Defendant's theory of the case was that victim patterned her rape account on the account told her by defendant's fiancee. The victim testified, however, that, although the fiancee had told her of the rape, she had not recounted any details. Defendant planned to call the fiancee to the stand to testify as to the details; he also planned to call the reporting officer, Guthrie, before calling the fiancee, to corroborate her story. The state objected, arguing that Guthrie's testimony as to the fiancee's prior consistent statement would not be admissible until the state challenged that witness's testimony as a recent fabrication. The court excluded the evidence when the state promised, and the court ordered, that the state could not claim the fiancee's account of her rape was a recent fabrication. After Guthrie testified to other matters, he was excused. The state proceeded to cross-examine the fiancee on the details of her rape, and to impeach her with the report of the incident, by establishing she failed to report certain details to the police. Defendant moved for a mistrial *after* the prosecution had finished its cross-examination, and when the court asked him if he wished to redirect the witness.

■ In *State v. Alderette*, 86 N.M. 600, 526 P.2d 194 (Ct.App.), *cert. denied*, 86 N.M. 593, 526 P.2d 187 (1974), defendant asserted that the state asked him questions on cross-examination in bad faith. However, defendant did not object to the question when it was asked. The bad faith claim was first raised some time later in a motion for mistrial. The court held that the objection was untimely and, therefore, raised no issue of bad faith. The defendant has a duty to object at the earliest time. *State v. Carmona*, 84 N.M. 119, 500 P.2d 204 (Ct.App.1972). In this case, defendant should have objected as soon as the state began its impeachment of defendant's fiancee in order to preserve the claimed error. We will not entertain this issue.

#### CONCLUSION

The judgment and conviction of attempted second degree murder is affirmed. The judgment and conviction for second degree CSP and kidnapping is set aside and the case remanded for new trial on those counts in accordance with this opinion.

ALARID and MINZNER, JJ., concur.