900 P.2d 358

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Earl MAYFIELD, Defendant–Appellant.**

**Nos. 14999, 15287.**

Court of Appeals of New Mexico.

June 21, 1995.

Tom Udall, Atty. Gen., Joel Jacobsen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Rita LaLumia, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

FLORES, Judge.

Earl Mayfield (Defendant) was convicted and sentenced on four counts of promoting prostitution under NMSA 1978, Section 30–9–4 (Repl.Pamp.1994) and one count of accepting earnings of a prostitute under NMSA 1978, Section 30–9–4.1 (Repl.Pamp.1994). By amended judgment, the trial court, pursuant to NMSA 1978, Section 31–18–17 (Repl. Pamp.1994), enhanced Defendant's basic sentence, based on a finding that Defendant was an habitual offender with three prior felony convictions. Defendant first appealed from the original judgment and later appealed from the trial court's amended judgment. We consolidated the two appeals.

Defendant raises several issues on appeal. All other issues raised in the docketing statement but not argued in the brief-in-chief are deemed abandoned. *State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985). We hold that the trial court committed reversible error in submitting an erroneous definitional instruction on masturbation to the jury. Accordingly, we reverse and remand for a new trial on all five counts. Some of the remaining issues asserted by Defendant are discussed in our unpublished memorandum opinion.

## FACTS

Prior to the charges that form the basis of this appeal, Defendant was charged in another case with four counts of promoting prostitution under Section 30–9–4(B), (C), (E), and (G), one count of accepting earnings of a prostitute pursuant to Section 30–9–4.1, and one count of possession of cocaine under NMSA 1978, Section 30–31–23 (Repl. Pamp.1989), all relating to an incident that occurred on March 16, 1990. Defendant pleaded guilty to the possession charge and the State entered a nolle prosequi on the remaining charges. While serving that sentence, Defendant was granted work release from noon to 2 a.m. to operate his escort service, Enchanting Escorts.

The charges in this case stem from an undercover investigation of Enchanting Escorts by the Albuquerque Police Department. In November 1991, after seeing advertisements in the newspaper, vice officers Darcy Schodorf and Paul Heatley, among others, began investigating Enchanting Escorts.

### Schodorf's Testimony

On December 11, 1991, Schodorf answered an advertisement in the *Albuquerque Journal* announcing that Enchanting Escorts was "now hiring." Using the name "Cheryl Lopez," Schodorf called Enchanting Escorts and requested an interview for a job as a model. She spoke to a man who asked for her description and measurements and asked whether she would have a problem modeling lingerie. The man took Schodorf's number and called her back but was unable to reach her. Schodorf called back the next day and arranged to meet Tami Kochensparger, later identified as Defendant's girlfriend, in the parking lot of a fast food restaurant. Kochensparger met Schodorf and took her to an apartment later identified as Defendant's residence.

Once inside the apartment, Kochensparger introduced Schodorf to Defendant. Schodorf filled out an employment application which included the statement: "You are being employed by Enchanting Escorts. We are a legitimate business, no prostitution permitted." Defendant told Schodorf not to worry about the application or the waiver because it was just a formality. Defendant also told Schodorf that she would be modeling lingerie, giving body massages, and engaging in adult conversation. "He [Defendant] stated if the client was nude, it would be better for me."

Defendant described the procedure for screening clients, which included checking identification, verifying airline tickets if a client said he was from out of town, and determining whether a client was a police officer. Kochensparger told Schodorf that

she was to collect a $100 agency fee from the client up front, all of which went to the agency. When asked on direct examination how she was to make any money for herself, Schodorf responded:

> Off donations with the client, from the client. I was told that by [Defendant], that they don't condone prostitution, but that's not to say I wouldn't get offered a lot of money for sex. He told me if I did engage in prostitution, that he encourages that I practice save [sic] sex and that any prostitution or sex that I had with a client would be off the table. ,

Defendant told Schodorf that she would be making about $500 to $1500 per week from donations. He also promised her that if she were arrested for prostitution, he would bail her out. In Defendant's presence, Kochensparger explained that a lot of the customers would want sex, but that Schodorf did not have to provide sex. Kochensparger said Schodorf could do masturbation of the client. "She [Kochensparger] referred to masturbation between the breasts and called it a pearl necklace." After the interview was complete, Schodorf was asked if she could start working that night. Schodorf said that she could not start until the next day, but due to safety reasons never began working at Enchanting Escorts.

### Heatley's Testimony

A week later on December 17, 1991, Heatley called a number advertised in the newspaper for Enchanting Escorts and requested that a model be sent to his hotel room. Heatley rented a hotel room under an alias. Four officers waited in a room across the hall, monitoring Heatley's room with a listening device. At approximately 1:00 a.m. on December 18, 1991, an escort, later identified as Arlene Villa, came to the hotel room.

When Villa arrived, "she went through the room, looked under the bed, looked in the shower, looked under tables, behind the curtains, by the window" and then called the agency to check in. Villa asked Heatley if he was associated with law enforcement and

Heatley said that he was not. Villa explained that the service provided lingerie modeling, adult conversation, and a nude body massage, and requested an $80 agency fee.

After engaging in small talk, Heatley undressed and lay face down on the bed. Villa removed her clothes, revealing lingerie underneath, and proceeded to massage some lotion on his back. Villa then told Heatley to roll over. She placed a towel over his genitals and massaged his chest and legs. Villa then said "If there's any place I have not massaged, take my hand and place it there," so, Heatley placed Villa's hand on his groin. At that time, Villa told Heatley that for a donation he had the option of "finishing" [1] between her breasts or thighs. Heatley instead requested to have sexual intercourse with Villa to which she responded, "Well, I won't do that, but I will give you a blow job, but you have to wear a condom when I do." Villa requested $100 for the "blow job," which Heatley paid. At that point, officers who had been monitoring the room came in and arrested Villa.

### DISCUSSION

#### Masturbation Jury Instruction

Defendant claims that the trial court erred by submitting, over Defendant's objection, an erroneous definitional instruction on masturbation to the jury. We agree.

The statute defines prostitution as follows: "Prostitution consists of knowingly engaging in or offering to engage in a sexual act for hire." NMSA 1978, § 30–9–2 (Repl. Pamp.1994). To prove prostitution, the State had to prove a "sexual act" for hire. Sexual act is defined as "sexual intercourse, cunnilingus, fellatio, masturbation of another, anal intercourse or the causing of penetration to any extent and with any object of the genital or anal opening of another, whether or not there is any emission." *Id.* Section 30–9–2 does not define "masturbation" and it appears that no reported New Mexico case has attempted to provide a definition.

---

1. Heatley testified that "a finish" means that the male customer may reach climax by ejaculating between the woman's breasts or thighs.

The State's requested definition, which was accepted by the trial court and included in the instructions to the jury, stated: " 'Masturbation' means the erotic stimulation of the genital organs commonly resulting in orgasm and achieved by manual or other bodily contact exclusive of sexual intercourse, by instrumental manipulation, occasionally by sexual fantasies, or by various combinations of these agencies." *See Webster's New Collegiate Dictionary* 708 (1977).

Defendant asserts that the jury instruction defining masturbation was erroneous because it prohibited erotic stimulation by sexual fantasies, an act not proscribed by Section 30–9–4. There was evidence that Defendant's employees only modeled lingerie, gave nude body massages, and engaged in adult conversation. Defendant argues that if the jury determined that adult conversation and nude body massages constituted "sexual fantasies," such faulty premise could lead to erroneous findings of "masturbation," and ultimately to an improper finding of "prostitution." We agree.

The jury could have understood the definition of masturbation to include four alternative means of achieving masturbation: (1) by manual or other bodily contact; (2) by instrumental manipulation; (3) by sexual fantasies; or (4) by a combination of any of the above. One alternative then, is that masturbation means the erotic stimulation of the genital organs commonly resulting in orgasm and achieved by sexual fantasies.

We hold that the "sexual fantasy" alternative included in the trial court's definitional instruction does not fall within the statutory prohibition. Three reasons support this holding.

First, the "sexual fantasy" alternative does not appear to find universal, or even wide, support among lexicographers. Other dictionaries do not include stimulation by sexual fantasies as a definition of masturbation by another person. *See, e.g., The Random*

*House Dictionary of the English Language* 883 (1971); Supplement to the *Oxford English Dictionary* 855 (1976) ("[T]o cause (another person) to have an orgasm by stimulation of his or her genitals.").

Second, the "sexual fantasy" definition appears out of place among the other sexual acts defined in Section 30–9–2. We read that section "as a whole and in conjunction with the related statutory provisions." *Junge v. John D. Morgan Constr. Co.,* 118 N.M. 457, 463, 882 P.2d 48, 54 (Ct.App.1994). The other words used to define "sexual act" in Section 30–9–2 include sexual intercourse, cunnilingus, fellatio, and anal intercourse, all of which are defined in the Uniform Jury Instructions for sex crimes as requiring some form of touching.[2] Section 30–9–2 further defines "sexual act" as "the causing of penetration to any extent and with any object of the genital or anal opening of another, whether or not there is an emission." This alternative means of performing a sexual act also clearly requires some form of touching. On the other hand, "erotic stimulation" achieved by "sexual fantasies" can occur absent a physical touching.

Third, we find it unlikely that the legislature would use such an obscure means to criminalize behavior that is common and otherwise lawful, such as erotic dancing at nightclubs. Under the "sexual fantasy" definition, such dancing could well be prosecuted as prostitution.

Here, the jury may have convicted Defendant on a combination of the factors listed in the definition or solely on the impermissible alternative of sexual fantasies. It is impossible to determine whether the impermissible alternative of the definition was relied upon by the jury to convict Defendant of Counts I through V. We, therefore, conclude that the jury instruction defining masturbation impermissibly extends the scope of criminal conduct proscribed by Section 30–9–2 and con-

2. "Sex acts"; defined.
    Sexual intercourse means the penetration of the vagina, the female sex organ, by the penis, the male sex organ, to any extent.
    Cunnilingus means the touching of the edge or inside of the female sex organ with the lips or tongue.

    Fellatio means the touching of the penis with the lips or tongue.
    Anal intercourse means the penetration of the anus by the penis to any extent.
SCRA 1986, 14–982.

stitutes reversible error. Because a finding of prostitution was required to convict Defendant of all five counts, *see* §§ 30–9–4(A), (C)–(E), –4.1, we reverse Defendant's convictions for Counts I through V and remand for a new trial. On retrial, if a definitional instruction is provided to the jury, it should omit the reference to sexual fantasies.

*CONCLUSION*

We hold that the trial court committed reversible error in providing the jury with a statutorily incorrect definitional instruction on masturbation. Thus, we reverse Defendant's convictions and remand for a new trial in accordance with this opinion.

**IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.