This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                    NO.   28,324

**CLINTON SKIPPINGS**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Don Maddox, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Clinton Skippings (Defendant) appeals his conviction of voluntary manslaughter contrary to NMSA 1978, Section 30-2-3(A) (1994). On appeal, he claims that (1) he was entitled to a jury instruction on involuntary manslaughter, and (2) it was error for the district court to allow certain statements of a witness. We conclude that Defendant was entitled to a jury instruction on involuntary manslaughter and, accordingly, we remand for a new trial and do not discuss Defendant's second issue.

## I. BACKGROUND

Defendant met his girlfriend, Christy Rogers (Victim), a little more than a year before her death. Defendant and Victim were living together when he violated the terms of his probation and served two months in custody. While he was in custody, Victim and another man were living in Defendant's home, and the two ultimately sold many of Defendant's possessions in order to buy drugs. At the time of Defendant's release, Victim was incarcerated for a little more than a month for drug offenses. On March 5, 2007, Victim was released and made contact with Defendant. Defendant testified that he did not blame Victim for her actions because of her addiction, and the two reconciled. That night, they stayed in a room that Defendant paid for at the Family Inn, and the next day on March 6, 2007, Defendant took Victim shopping for

new clothes and make-up at K-Mart. Defendant testified that the two of them spoke about Victim abstaining from drugs and changing her life. At the end of the day, Defendant dropped Victim off at her father's house where she spent the night.

The next day on March 7, 2007, at approximately 2:00 p.m., Defendant discovered that Victim was on Dunn Street, an area known for the use and sale of narcotics. After picking her up, Defendant drove Victim back to her father's house. Later that night, Defendant went back to Dunn Street where he again saw Victim. Defendant testified that Victim seemed "high" to him at the time. A post mortem toxicological examination revealed that Victim had narcotics in her system at the time of her death. The two of them argued about whether Victim would go back to her father's house. At some point, Defendant pushed Victim, which resulted in Victim falling, hitting her head on the street, and dying.

## II.  DISCUSSION

The jury was instructed on second-degree murder and voluntary manslaughter. Defendant argues that his theory of the case, along with the evidence presented below, supports an involuntary manslaughter instruction. We agree and remand for a new trial.

The suitability of instructions to the jury, given or denied by the district court, presents a mixed question of law and fact, which we review de novo. *State v. Gaitan*,

2002-NMSC-007, ¶ 10, 131 N.M. 758, 42 P.3d 1207. "To permit an instruction on a lesser[-]included offense, there must be evidence tending to establish the lesser offense." *State v. Fish*, 102 N.M. 775, 779, 701 P.2d 374, 378 (Ct. App. 1985). Additionally, there must be some view of the evidence which could sustain a finding that the lesser offense was the highest degree of the crime committed. *Id.* The failure to provide a defendant with an instruction of a lesser-included offense that he is entitled to is a reversible error. *See State v. Reynolds*, 98 N.M. 527, 529, 650 P.2d 811, 813 (1982).

New Mexico has generally noted three types of cases where an involuntary manslaughter instruction is appropriate. *State v. Yarborough*, 1996-NMSC-068, ¶ 8, 122 N.M. 596, 930 P.2d 131. The first involves the commission of an unlawful act not amounting to a felony. The second is a lawful course of conduct that might produce a death in an unlawful manner. The third is the commission of a lawful act that might produce death without due caution and circumspection. *Id*.; § 30-2-3(B). In the instant case, Defendant argues that a jury could conclude that he was involved in an unlawful act, such as the misdemeanor of battery, contrary to NMSA 1978, Section 30-3-4 (1963), or the misdemeanor of battery against a household member, contrary to NMSA 1978, Section 30-3-15 (2008). We agree with Defendant and need not discuss if other possible views of the case would support an involuntary

manslaughter instruction; it is sufficient if one applies to the facts. *State v. Romero*, 2005-NMCA-060, ¶ 17, 137 N.M. 456, 112 P.3d 1113.

At trial, defense counsel began his opening statements by conceding that Defendant had caused the death of Victim. Defense counsel stated, however, that the evidence would show that Defendant's actions were not consistent with someone who had any intent to kill and, at the end of trial, if the jury was going to "find him guilty of anything[,] that it [should] be involuntary manslaughter." During the State's case, a witness to the events testified that Defendant and Victim were arguing as they approached him on the street and, as they walked closer to the witness, he saw that they were hitting each other. At some point, Victim jumped up on Defendant's front and, in trying to get Victim off, Defendant caused her to hit the ground. Defendant also testified that he was not conscious of hurting Victim, that her death was an accident, and that when he pushed her and she fell, he was not planning on killing her.

We acknowledge that evidence was presented to the jury that conflicts with the Defendant's theory of the case. However, when considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction. *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139. A defendant is entitled to have his theory of the case submitted to the jury under

proper instructions where the evidence supports it. *State v. Benavidez*, 94 N.M. 706, 708, 616 P.2d 419, 421 (1980), *overruled on other grounds by Sells v. State*, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982). Although this case presents conflicting evidence that supports multiple theories, the evidence in the record is sufficient to warrant submission of an instruction on involuntary manslaughter, and the questions of fact should have been given to the jury to apply in the context of the multiple theories.

The State argues that Defendant's proffered instruction on involuntary manslaughter incorrectly characterized the law, and it was therefore not error for the district court to refuse the instruction because it was inaccurate. The first element of UJI 14-231 NMRA (involuntary manslaughter instruction) states: "_____ (*name of defendant*) _____ (*describe defendant's act*)[.]" The instruction proffered by Defendant read as follows: "[Defendant] and [Victim] were engaged in an argument that escalated into a physical fight and [Victim] fell to the ground, struck her head[,] and died as a result of her injuries." The State argues that the "act" as requested by the instruction was never identified and, therefore, the district court properly refused the instruction.

At the jury instruction conference, the district court refused the instruction without elaborating, stating only that "I think the trouble is that the involuntary is present, essentially, to the exclusion of others." While this statement is not

particularly illuminating, the record reveals that the district court heard defense counsel's opening statement, was asked to allow an involuntary instruction at the jury instruction conference, and received a proposed instruction with the correct UJI number typed on it. Our cases have previously held that the purpose behind the rule (Rule 5-608(D) NMRA) requiring that a correct instruction be tendered to the court is to alert the court's mind to the argument being made and invoke a ruling. *See Hill*, 2001-NMCA-094, ¶ 7; *State v. Diaz*, 121 N.M. 28, 33-34, 908 P.2d 258, 263-64 (Ct. App. 1995); *Gallegos v. State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992). Here, the district court neglected its duty to provide Defendant with an instruction to which he was entitled. *See Gallegos*, 113 N.M. at 341, 825 P.2d at 1251 (holding that a defendant may offer a modified uniform jury instruction on a lesser-included offense and, "[i]f the court believes no modification is appropriate, the court should instruct in the exact language of the uniform jury instruction"); *Diaz*, 121 N.M. at 33, 908 P.2d at 263 (holding that "an instruction issue had been properly preserved by tender of a uniform jury instruction although the specifically tendered instruction was incorrect"; *Hill*, 2001-NMCA-094, ¶ 16 (stating that it is reversible error to not instruct on a requested lesser-included offense if the lesser is included in the greater, there is evidence supporting the view that the lesser was the highest crime committed, and the issue was preserved).



**III.    CONCLUSION**

For the above reasons, we remand this case to the district court with instructions for further proceedings not inconsistent with this opinion.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**