605 P.2d 1168
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**James B. WALKER,
Defendant-Appellant.**

**No. 4182.**

Court of Appeals of New Mexico.

Jan. 3, 1980.

Dick A. Blenden, Paine, Blenden & Diamond, Carlsbad, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy L. Pacheco, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of possession of marijuana with intent to distribute contrary to § 30–31–22 A(1)(a), N.M.S.A.1978, defendant appeals. The sole issue is the legality of a search and seizure. We reverse.

Defendant and Fierro were stopped at a routine border patrol check point between Alamogordo and Las Cruces, New Mexico.

New Mexico State Police Officer Skinner was checking drivers licenses and vehicle registrations. Defendant rolled down his window when he produced his driver's license and Skinner smelled the odor of burnt marijuana coming from inside the vehicle. (Skinner testified he had training regarding the odor of marijuana.) Skinner then directed defendant to a secondary check area and asked for the vehicle registration. It was produced and in order. Skinner directed the subjects to get out of the vehicle and he "advised them that I would be searching the vehicle for marijuana."

The following colloquy regarding the search then occurred:

Q. Can you please describe this search to the Court?

A. Both the subjects were out, and they had been advised that the vehicle would be searched. I entered the vehicle from the driver's side, first of all, and then went to the passenger side, and in a boot in the motor hump in the van, I removed a plastic film container that had an odor of burnt marijuana in it and also had some small portion of what appeared to be marijuana residue. I then advised both subjects of their Miranda warning, and they stated they understood their warning. I advised them, do you understand; and the reply was, yes.

Q. Were they under arrest at that point?

A. No, Ma'am, they were not under arrest.

Q. Why did you advise them of their Miranda rights at that point?

A. There was several containers in the rear of the van, and I wanted to determine whose they were, and I wanted to ask them pertinent questions pertaining to those containers.

Q. Okay. Did you search the glove compartment?

A. The entire front of the van was searched first, and then the search

proceeded behind the seats into the rear area. I asked Mr. Fierro whose items they were, first of all, and he pointed out the two suitcases which he said were his. Those two suitcases were searched first. From one of those suitcases, I recovered a package of Zig-Zag rolling paper, and then the search went on to a yellow suitcase which Mr. Walker said was his.

Q. Was that suitcase locked?

A. It was not key locked. It was just clamped.

Q. It was closed, but didn't have a lock on it?

A. That's correct.

Q. And who did the yellow suitcase belong to?

A. Mr. Walker said it was his suitcase.

Q. Did you ask him for permission to search that suitcase?

A. Just asked him the ownership of the suitcase, who it belonged to, then I entered the suitcase.

Q. What did you find in the suitcase?

A. The first item I removed was a paper bag containing thirteen plastic baggies of suspected marijuana. I removed that item from the suitcase and reached back into the suitcase area from the same area where I had pulled the paper bag. I pulled a white plastic bag containing approximately one pound of suspected marijuana.

Q. What did you do at that point?

A. Maintained the evidence with myself and continued the search of the vehicle. The search went further into the rear of the van where I found a suspected marijuana roach in the ashtray in the rear of the Chevrolet van.

Q. Can you describe where in the rear?

A. It was similar to a table with an ashtray sitting on top of it, right along in the area where the back doors would be in the van, and the roach was in this ashtray of the table.

Q. Did you do any other further searching of the vehicle?

A. The entire area of the inside of the vehicle was searched, and that was the extent of the items that I recovered, and then the arrests were made at that time, when the search was completed.

Q. All right. Now, you could not tell if there was any smell of marijuana coming from those bags, could you?

A. That is correct.

Q. So, as far as you knew at that time, they were just luggage and in the vehicle?

A. That is correct.

Defendant and Fierro were placed under arrest after the search was completed.

In *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the police acting on information of a reliable informant who provided detailed information that Sanders would arrive at the airport carrying a green suitcase in which he would be carrying marijuana. The police observed this and watched Sanders place the green suitcase in the trunk of a taxi. The police then stopped the taxi. At the request of the officers the taxi driver opened the trunk where the officer found the green suitcase. Without asking anyone's permission, the police opened the green suitcase and discovered what proved to be marijuana.

The *Sanders* court stated that the sole question to be decided was "whether the police, rather than immediately searching the suitcase without a warrant, should have taken it, along with respondent, to the police station and there obtained a warrant for the search."

The State in its Answer Brief states that the foregoing quoted testimony "makes it difficult for the State to argue in good faith that the officer had some much less sufficient probable cause to believe that the suitcase contained marijuana." We agree.

We hold that the instant case is analogous to and controlled by *Sanders*. We quote liberally from *Sanders* :

We conclude that the State has failed to carry its burden of demonstrating the need for warrantless searches of luggage properly taken from automobiles. A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted in *Chadwick*, the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. See 433 U.S. 1, at 13, 97 S.Ct. 2476, at 2484, 53 L.Ed.2d 538. Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.

Similarly, a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations. One is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them. Accordingly, the reasons for not requiring a warrant for the search of an automobile do not apply to searches of personal luggage taken by police from automobiles. We therefore find no justification for the extension of *Carroll* and its progeny to the warrantless search of one's personal luggage merely because it was located in an automobile lawfully stopped by the police.

In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected.

Since we are dealing directly with a suitcase we do not concern ourselves with footnote 13, which states:

Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant. See *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) (per curiam). There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not. Our decision in this case means only that a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile.

The warrantless search cannot be justified and, accordingly, defendant's motion to suppress the contents of the suitcase should have been granted.

Reversed.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.