814 P.2d 1030

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Frank Steven APODACA,
Defendant–Appellant.**

**No. 12274.**

Court of Appeals of New Mexico.

April 25, 1991.

Certiorari Denied July 8, 1991.

Tom Udall, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Todd Hotchkiss, Timothy M. Padilla & Associates, P.C., Albuquerque, for defendant-appellant.

## OPINION

HARTZ, Judge.

Defendant was convicted of possession with intent to distribute marijuana. He was stopped while driving north on Interstate 25 south of Socorro. Officer Pete Conticelli stopped the vehicle for an alleged violation of the New Mexico safety-belt statute. After inquiry regarding the ownership and destination of the vehicle, Officer Conticelli obtained permission to look in the trunk. There he found a suitcase from which he claimed he detected the odor of marijuana. With the assistance of a passing border patrol agent, Officer Conticelli broke open the suitcase; it contained the marijuana that formed the basis of defendant's conviction.

On appeal defendant challenges the denial of his motion to suppress the marijuana. He contends: (1) the officer did not have reasonable suspicion to justify the initial stop of his vehicle, (2) the stop was pretextual, (3) consent to search was illegally obtained during the course of an unjustifiably prolonged detention, (4) any consent to search was withdrawn before the suitcase was opened, and (5) the warrantless search of the suitcase was unlawful. Defendant also contends that there was insufficient evidence to establish that the alleged crime occurred in New Mexico. We affirm.

We view the evidence in the light most favorable to support the district court's ruling on the motion to suppress and the jury's verdict. *See State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978); *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App. 1983).

## I. THE STOP

The New Mexico safety belt statute, NMSA 1978, Section 66–7–372(A) (Repl. Pamp.1987) states in pertinent part:

[E]ach front seat occupant of a passenger car manufactured with safety belts in compliance with federal motor vehicle safety standard number 208 shall have a safety belt properly fastened about his body at all times when the vehicle is in motion, unless all seating positions equipped with safety belts are occupied.

Officer Conticelli testified that he stopped defendant's vehicle because the shoulder harnesses for the driver and front seat passenger were dangling from the ceiling. Defendant contends that the dangling shoulder harnesses did not establish non-compliance with the statute because the statute required only fastening the lap belt,

which could be disconnected from the shoulder harness. Therefore, in his view, Officer Conticelli did not have reasonable grounds to believe that defendant and his passenger were violating the law.

We find it unnecessary to decide whether defendant's construction of Section 66–7–372 is correct. Even if it is, Officer Conticelli possessed sufficient information to establish reasonable suspicion justifying the stop. We agree with the district court that police officers should not be required to know the design of the safety-belt system in every motor vehicle. Moreover, regardless of whether Officer Conticelli knew that the lap belt could be detached from the shoulder harness in defendant's vehicle, it was reasonable for him to believe that a driver or passenger who permitted the shoulder harness to dangle free was not wearing his lap belt either. A reasonable suspicion may be a mistaken one. *Cf. State v. Eden,* 108 N.M. 737, 779 P.2d 114 (Ct.App.1989) (reasonable but mistaken belief that snowmobile was a motor vehicle did not invalidate arrest).

## II.  PRETEXT

■ Defendant argues that the stop of his vehicle was unconstitutional under the doctrine expressed in *United States v. Guzman,* 864 F.2d 1512 (10th Cir.1988). *Guzman* held that a stop is unconstitutional if " 'under the same circumstances a reasonable officer *would* [not] have made the stop in the absence of the invalid purpose.' " *Id.* at 1515 (quoting *United States v. Smith,* 799 F.2d 704, 709 (11th Cir.1986) (emphasis in original). As in *State v. Benjamin C.,* 109 N.M. 67, 781 P.2d 795 (Ct. App.1989), we need not decide whether to follow *Guzman,* because the *Guzman* pretext doctrine would not invalidate the stop in this case.

The district court rejected defendant's claim under *Guzman,* making a specific finding that "the stop was not pretextual in nature." Officer Conticelli testified that he had a practice of stopping vehicles for violations of the safety-belt law. He stated that in the past year he had issued some fifty citations and an additional fifty warn-

ings for such violations. He testified that he had consulted with his superiors about this practice. Defense counsel vigorously cross-examined the officer concerning his motivations for the stop, and defendant's testimony at the suppression hearing could have cast suspicion on the officer's testimony. The issue, though, is whether the evidence at the hearing was sufficient to justify the district court's determination that the stop was not pretextual. It was. *See United States v. Werking,* 915 F.2d 1404, 1408 (10th Cir.1990).

## III.  PROLONGATION OF THE STOP

■ Defendant contends that even if the initial stop was lawful, he should have been released prior to the request to search the trunk. We disagree.

After defendant was stopped, he exited his vehicle and approached Officer Conticelli, who requested defendant's driver's license. Officer Conticelli noted that defendant carried a Texas driver's license while the vehicle bore Oklahoma license plates. During a period of less than ten minutes Officer Conticelli pursued this discrepancy. He requested the vehicle registration. Defendant could not produce one. Defendant stated that he was buying the vehicle from someone named "Jason." He also stated that he had been in El Paso and was returning the car to Jason in Oklahoma. When Officer Conticelli asked defendant how he had travelled to El Paso in the first place, defendant did not respond. When the officer asked the passengers in the vehicle where they were going, they said Ruidoso. Defendant did not respond when the officer asked him why the passengers and defendant declared different destinations. During the conversation defendant appeared nervous as he repeatedly removed and put on his sunglasses. At some point during these discussions Officer Conticelli ran a computer check on defendant's vehicle. The check came back "not on file," which the officer interpreted as meaning that the vehicle was newly registered. His suspicions aroused by the information he had obtained, Officer Conticelli requested permission to look in the trunk of the vehicle. Defendant does not

challenge the district court's finding that he voluntarily consented.

We hold that the information acquired by Officer Conticelli was sufficiently suspicious to justify the relatively brief detention of defendant and his vehicle. Officer Conticelli's inquiries were appropriate police work. When Officer Conticelli requested permission to look in the trunk, there were still several suspicious circumstances that had not been resolved. Therefore, we need not rely on our holding in *State v. Bolton*, 111 N.M. 28, 801 P.2d 98 (Ct.App. 1990), that even after reasonable suspicion has been dissipated, an officer may detain a motorist momentarily to request permission for a search. Also, because Officer Conticelli had reasonable grounds to detain defendant, we need not decide whether the latter part of the conversation took place during a detention or during a consensual encounter. *See United States v. Werking* (encounter between officer and driver became consensual citizen encounter once officer returned license and registration to driver); *United States v. Deases*, 918 F.2d 118 (10th Cir.1990) (following *Werking*).

On appeal defendant makes much of Officer Conticelli's testimony that defendant and his passengers were free to leave while the officer was conducting his inquiry. Defendant suggests that this testimony meant that any suspicion must have lapsed. The officer's subjective belief, however, is not relevant to the existence of reasonable suspicion. *See Bolton*, 111 N.M. at 42, 801 P.2d at 112; 1 W. LaFave, *Search and Seizure* § 3.2(b) (2d ed. 1987). The information known to Officer Conticelli justified the detention. Nothing more was required.

## IV. SEARCH OF THE SUITCASE

Defendant contends that the search of the suitcase found in the trunk cannot be justified as a consent search. The state does not challenge that contention. The findings of the district court refer only to consent to search the trunk. The court justified the search of the suitcase itself on

the basis of probable cause. Therefore, we consider whether there was probable cause to search the suitcase and whether that probable cause justified a search without a warrant.[1]

The district court found "[t]hat probable cause existed for the search once the trunk was open and the officer identified marijuana on the outside of the suitcase." That finding was supported by the evidence. Officer Conticelli testified that when the trunk was opened he observed three small overnight bags and a suitcase. On the handle of the suitcase was a green substance that he believed to be marijuana. He leaned his head near the suitcase and smelled the odor of marijuana. He had considerable training and experience in detecting marijuana by its odor. Thus, Officer Conticelli had probable cause to believe that the suitcase contained marijuana. *See State v. Capps*, 97 N.M. 453, 641 P.2d 484 (1982); *State v. Sandoval*, 92 N.M. 476, 590 P.2d 175 (Ct.App.1979).

■ To justify searching the suitcase without a warrant, however, the officer needed probable cause to search not just the suitcase but the entire vehicle. In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the United States Supreme Court held that if officers possess probable cause to justify the search of a motor vehicle, they can search without a warrant every part of the vehicle and its contents, including sealed containers, that may conceal the object of the search. *Id.* at 825, 102 S.Ct. at 2173. The New Mexico Supreme Court followed *Ross* in *State v. Pena*, 108 N.M. 760, 779 P.2d 538 (1989). *Ross* overruled in part *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (ordinarily need warrant to search luggage in automobile), upon which we relied in *State v. White*, 94 N.M. 687, 615 P.2d 1004 (Ct.App.1980), and *State v. Walker*, 93 N.M. 769, 605 P.2d 1168 (Ct.App.1980). Although we have previously recognized the rule in *Ross, see State v.*

---

1. The state also contends that defendant abandoned the suitcase, thereby waiving any fourth amendment protection with respect to the suitcase. We do not address that argument. The

district court made no finding regarding abandonment. Nor does the state's brief or our review of the record indicate that the issue was preserved in the district court.

*Miles*, 108 N.M. 556, 775 P.2d 758 (Ct.App. 1989), we have not expressly overruled *White* and *Walker* to the extent that they are inconsistent with *Ross*. It is appropriate for us to do so now, particularly given our Supreme Court's approval of *Ross* in its decision in *Pena*.

■ In this case Officer Conticelli had probable cause to search the entire vehicle. Having identified marijuana on (and in) one container in the vehicle, he had probable cause to believe that elsewhere in the vehicle there was additional marijuana and other evidence of the offense, such as documentation identifying the perpetrators. *See State v. Pena* (discovery of marijuana residue on roach clip in vehicle ashtray established probable cause to search entire vehicle); *State v. Capps* (odor of marijuana provided probable cause to search passenger compartment and trunk); *State v. Sandoval (same)*.

The fact that the evidence of the presence of contraband may have focused on a specific container did not dispel probable cause to search the entire vehicle. In *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), officers who had been conducting surveillance on two pickup trucks smelled marijuana as they approached the vehicles. In the back of the trucks they recognized packages of the sort commonly used for marijuana. The Supreme Court wrote:

> Given their experience with drug smuggling cases, the officers no doubt suspected that the scent was emanating from the packages that they observed in the back of the pickup trucks. The officers, however, were unaware of the packages until they approached the trucks, and contraband might well have been hidden elsewhere in the vehicles.

*Id.* at 482, 105 S.Ct. at 884. The Court held that *Ross* applied because there was probable cause to search the vehicles.

In our view, the United States Supreme Court decision in *Johns*, as well as New Mexico precedents such as *Pena, Capps*, and *Sandoval*, compel the conclusion that Officer Conticelli had probable cause to search the entire vehicle. Therefore, no warrant was required to search the suitcase.[2]

## V. PROOF THAT THE CRIME OCCURRED IN NEW MEXICO

■ The state bore the burden of proving beyond a reasonable doubt that the alleged offense occurred within New Mexico. *See State v. Benjamin C.*. Defendant contends that the state failed in meeting this burden because of the absence of affirmative evidence that defendant was seized at a particular place in New Mexico. We reject this contention. Circumstantial evidence sufficed to establish the location of the crime. *See State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976).

The state's summary of the pertinent evidence, which has not been challenged by defendant, includes:

1. Officer Conticelli testified that he was a New Mexico State Police Officer residing in Socorro and that he was on his regular patrol when he stopped defendant on Interstate 25.

2. Officer Conticelli testified that he ran a registration check through the State of Oklahoma on the license plate displayed on defendant's vehicle. When asked how long the check took, he responded: "From out of state it takes longer than New Mexico. It took a couple of minutes."

3. When cross-examined about the identity of the border patrol agent who assisted him in opening the suitcase, Officer Conticelli testified that the agent regularly transported illegal aliens back and forth through Officer Conticelli's patrol area and routinely stopped to offer Offi-

---

**2.** We note that this is not a case where an officer with probable cause to search a suitcase delayed seizing it until it was placed in a vehicle. In that circumstance it may be unreasonable to search the suitcase without a warrant despite probable cause to search the entire vehicle. *Cf. United States v. Chadwick*, 433 U.S. 1,

97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (unlawful to conduct warrantless search of footlocker seized as it was being placed in trunk of vehicle); *United States v. Barrett*, 890 F.2d 855, 862 (6th Cir.1989) (probable cause acquired after container placed in vehicle).

cer Conticelli assistance. Asked where the agent patrolled, Officer Conticelli answered: "He doesn't patrol. All he does is transport prisoners from Albuquerque to down south—T or C or wherever their holding area is for the illegals."

4. A state police narcotics agent called to establish the chain of custody of the marijuana testified that he took custody of the blue suitcase containing the marijuana from Officer Conticelli in Socorro.

5. State's Exhibit 3, a New Mexico State Police form entitled "Drug Control Report," records that the marijuana was seized on Interstate 25 in Socorro County.

To this summary we need add only that there was no need to tell a jury in Socorro County that Socorro and T or C (whose official name is "Truth or Consequences") are within New Mexico.

## VI. CONCLUSION

For the above reasons, we affirm defendant's conviction.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.