923 P.2d 599

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Scott PALLOR, Defendant–Appellant.**

**No. 15971.**

Court of Appeals of New Mexico.

May 31, 1996.

Certiorari Denied Aug. 21, 1996.

Tom Udall, Attorney General, Ann M. Harvey, Asst. Attorney General, Santa Fe, for Appellee.

T. Glenn Ellington, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for Appellant.

Nancy Hollander, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, for Amicus Cu-

riae New Mexico Criminal Defense Lawyers National Association of Criminal Defense Lawyers.

## OPINION

ALARID, Judge.

1. Defendant entered a plea of no contest to one count of possession of marijuana with intent to distribute, contrary to NMSA 1978, Section 30–31–22(A)(1)(a) (Cum.Supp.1995), a fourth degree felony. In connection with his plea, Defendant reserved his right to appeal the trial court's denial of his motion to suppress evidence based on the stipulated facts and memoranda of the parties. On appeal, Defendant argues that the court erred in failing to grant his motion to suppress because the stop was pretextual, there was no reasonable suspicion to justify the stop, and the veracity of the confidential informant was not established. We affirm the trial court's decision.

## FACTS

2. According to the stipulated facts, Defendant's vehicle was stopped on February 19, 1993. Defendant was a passenger in the car, which was being driven by an unlicensed sixteen-year-old. Defendant was questioned about his license and it was determined that his license was suspended. The driver was cited for driving without a license and Defendant was cited for allowing an unlicensed driver to drive. Detective Lutonsky, who assisted in this stop, had stopped Defendant two months earlier who was driving with a suspended license at that time. The record does not indicate whether citations were issued at that initial stop.

3. Four days later, on February 23, Detective Earl received a tip from a "concerned citizen," known to him, who indicated that Defendant was in possession of several bags of marijuana which were ready for shipment to Phoenix, Arizona. In addition, the informant provided the make, model, and license plate number of the car. To the best of Detective Earl's knowledge, the concerned citizen had nothing to gain by offering the tip and had offered accurate and reliable information in the past. The informant did not ask for payment, but the officers, on their own, decided to pay the informant at a later time. This concerned citizen continues to provide information on other cases.

4. After receiving the tip, Detectives Earl, Lutonsky, and Borde began surveillance of Defendant's vehicle at approximately 11:00 p.m. During the three hours of surveillance, Defendant drove around town for approximately one hour, then entered a residence where he remained for two hours. At 2:00 a.m. Defendant left the residence in his vehicle and proceeded in a northerly direction. Detective Earl said, "Let's go ahead and stop him." Detective Lutonsky, who had made the earlier stops said, "He's driving on a revoked license." It is not clear from the stipulated facts whether Detective Earl was aware of the suspended license prior to Detective Lutonsky's statement.

5. All surveillance units using their emergency equipment stopped Defendant's vehicle. When Defendant was asked for his driver's license, he responded that he had not taken care of the problem since he had last spoken to Detective Lutonsky. As Defendant attempted to explain the reason he was still driving on a revoked license, he was asked to exit the vehicle. At some point during this interchange the detectives noticed a nylon bag on the back seat. Detective Earl asked if he could look in the vehicle. Defendant responded affirmatively. Detective Earl started to check the vehicle while Detective Lutonsky questioned Defendant. According to the stipulated facts, "after a moment" Detective Earl could smell marijuana in the vehicle. There was also a smell of cologne. Detective Earl testified that he could tell that the smell of marijuana was coming from the sports bag in the back seat. A search of the bag revealed that it contained bundles of marijuana wrapped in brown tape. Defendant was arrested and advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A search of the trunk uncovered three more nylon bags containing marijuana in the same type of tape-wrapped packages.

6. The trial court, relying solely on the stipulated facts, conceded that if the evidence were admitted, Defendant would be convicted and, if the motion to suppress were granted,

the State would not have a case. The court then denied the motion to suppress on the stipulated facts and accepted Defendant's plea on condition of appeal.

DISCUSSION

7. On appeal Defendant argues that the facts demonstrate that the stop was pretextual because there was no reasonable suspicion to stop the vehicle with the information obtained from the informant's tip. Defendant further contends that because the stop was pretextual, the subsequent consent was tainted and the evidence obtained should be suppressed. The State argues that the claim of an illegal pretextual stop fails because the officers were engaged in ongoing surveillance and that the stop of a moving vehicle on other discrete and objective grounds is not prohibited. *United States v. Maejia*, 928 F.2d 810, 814–15 (8th Cir.1991).

■ 8. In its brief, the State renews a motion made to the trial court to supplement the record with the transcript of the hearing before the magistrate judge. It is clear that the trial court relied only on the stipulated facts and not on the transcript of the magistrate hearing. Appellate review only allows us to consider evidence presented to the trial court. *See State v. Trammel*, 100 N.M. 543, 545, 673 P.2d 827, 829 (Ct.App.1983). We hereby DENY the State's motion to supplement the record.

## I. STANDARD OF REVIEW

■ 9. The standard of review pertaining to suppression motions is whether the evidence at the suppression hearing was sufficient to justify the trial court's determination that the stop of Defendant's vehicle was not pretextual. *State v. Apodaca*, 112 N.M. 302, 304, 814 P.2d 1030, 1032 (Ct.App.), *cert. denied*, 112 N.M. 220, 813 P.2d 1018 (1991). The trial court's order denying Defendant's motion to suppress will be upheld if supported by substantial evidence. *State v. Galloway*, 116 N.M. 8, 9, 859 P.2d 476, 477 (Ct.App.1993).

■ 10. On appeal we inquire into "whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party." *State v.*

*Montoya*, 116 N.M. 297, 304, 861 P.2d 978, 985 (Ct.App.), *cert. denied*, 116 N.M. 364, 862 P.2d 1223 (1993). If there is substantial evidence to support the denial of the motion, the order will not be disturbed unless the determination of the trial court was erroneously premised. *See State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App. 1983).

■ 11. In accordance with the standard of review for evidence obtained after a warrantless search of a vehicle on a claimed pretextual stop, we follow a two-part analysis. *State v. Mann*, 103 N.M. 660, 663, 712 P.2d 6, 9 (Ct.App.1985), *cert. denied*, 103 N.M. 740, 713 P.2d 556 (1986). We look to the record to determine if there was a valid basis for the stop and secondly, we look for substantial evidence of the existence of facts indicating a "clearly delineated exception to the fourth amendment requirement for obtaining a search warrant." *Id.; see also United States v. Mendenhall*, 446 U.S. 544, 550, 100 S.Ct. 1870, 1875, 64 L.Ed.2d 497 (1980). We first consider the informant's tip and whether reasonable suspicion existed for the stop based on the information provided.

## II. BASIS OF THE STOP

■ 12. A police officer may stop a vehicle if he has reasonable suspicion that a law has been or is being violated. *State v. Galvan*, 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct.App.1977). To meet the reasonable suspicion standard the officer must be "'aware of specific articulable facts, together with rational inferences from those facts,'" *id.* (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975)), that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring. *State v. Porras–Fuerte*, 119 N.M. 180, 184–85, 889 P.2d 215, 219–20 (Ct.App.), *cert. granted*, 119 N.M. 21, 888 P.2d 467 (1994); *State v. Barton*, 92 N.M. 118, 119, 584 P.2d 165, 166 (Ct.App.) *cert. quashed*, 95 N.M. 593, 624 P.2d 535 (1978); *Galvan*, 90 N.M. at 131, 560 P.2d at 552. The officers were aware of articulable facts which would lead to a reasonable suspicion that Defendant was in possession of illegal narcotics and

could have made the stop on that basis. We conclude that based on the information provided reasonable suspicion existed to justify an investigatory stop. Having determined that the standard of reasonable suspicion had been met, the claim of a pretextual stop cannot be substantiated.

13. In this case, a "concerned citizen" volunteered the information that provided the basis for the initial surveillance. This informant was known to Detective Earl and had previously provided information that was reliable and accurate. The stipulated facts establish that, to the best of Detective Earl's knowledge, the informant had nothing to gain by disclosing the information. The informant offered the license plate number, the make and model of the car, and stated that Defendant had told him that he had in his possession several bags of marijuana ready to be shipped to Phoenix, Arizona. Under these facts both the veracity and the basis of knowledge of the informant are satisfied and the information provided specific enough indicia of reliability to justify reasonable suspicion for an investigatory stop. *See State ex rel. Taxation & Revenue Dep't Motor Vehicle Div. v. Van Ruiten,* 107 N.M. 536, 538–39, 760 P.2d 1302, 1304–05 (Ct.App.), *cert. denied,* 107 N.M. 413, 759 P.2d 200 (1988).

14. Defendant argues that the revoked license was used as a pretext to stop the vehicle. However, the facts indicate that the license was not the basis for the reasonable suspicion and the reason for making the stop; the informant's tip was. This was all the officers needed. *See Apodaca,* 112 N.M. at 305, 814 P.2d at 1033 (detention justified by information known to officer; officer's subjective belief not relevant to existence of reasonable suspicion); *United States v. Botero–Ospina,* 71 F.3d 783, 787 (10th Cir.1995) (traffic stop not pretextual if officer has reasonable suspicion motorist violated law; officer's subjective belief irrelevant), *petition for cert. filed* (March 1, 1996) (No. 95–8121). Also, the fact that the officers did not immediately stop Defendant but instead monitored his actions for a three hour period did not, under these circumstances, purge the reasonable suspicion of its ripeness. *Cf. Campos v. State,* 117 N.M. 155, 159, 870 P.2d 117, 121

(1994) (officer may wish to forego arrest temporarily in order to gather evidence).

15. The fact that Defendant's license was revoked operates only to support the decision to stop the vehicle. A police officer's undisputed testimony that he knew the defendant's license was revoked at the time he was seen driving on a public street and that he stopped the defendant to check his driving privileges was held to constitute a sufficient basis to justify a warrantless arrest for an offense committed in the presence of an officer. *State v. Gutierrez,* 76 N.M. 429, 415 P.2d 552 (1966). Accordingly, any inference that can be drawn from the facts that the revoked license played any part in the reasoning to stop Defendant will be viewed in the manner most favorable to the prevailing party and all reasonable inferences in support thereof will be indulged by the reviewing court. *See Montoya,* 116 N.M. at 304, 861 P.2d at 985.

## III. VALIDITY OF CONSENT

16. Having established that the stop was not pretextual, we address the issue of consent. Because there was a valid basis for the stop, it was permissible for the officers to ask permission to search the vehicle. *See State v. Bolton,* 111 N.M. 28, 42–43, 801 P.2d 98, 112–13 (Ct.App.), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990). The test set out for the validity of the consent given is one of "voluntariness" to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 223–27, 93 S.Ct. 2041, 2045–48, 36 L.Ed.2d 854 (1973); *State v. Grossman,* 113 N.M. 316, 319, 825 P.2d 249, 252 (Ct.App.1991). The voluntariness of the consent here is clearly established by the stipulated facts.

17. Defendant does not argue that the consent was not voluntary, but that the consent was tainted by the unreasonableness of the detention. The trial court found, and we agree on appeal, that the detention was reasonable, consequently Defendant's consent to search the vehicle was not tainted. *See State v. Cohen,* 103 N.M. 558, 563–64, 711 P.2d 3, 8–9 (1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986); *State v. Valencia Olaya,* 105 N.M. 690, 696, 736 P.2d

495, 501 (Ct.App.), *cert. denied,* 105 N.M. 689, 736 P.2d 494 (1987).

CONCLUSION

18. Under the standard of review on appeal, we conclude that there was reasonable suspicion to detain Defendant and his subsequent voluntary consent was not tainted when a lawful stop was made. Accordingly, the trial court's decision to deny Defendant's motion to suppress is affirmed.

19. IT IS SO ORDERED.

APODACA, C.J., and DONNELLY, J., concur.