975 P.2d 355 (1998)
126 N.M. 355
1999-NMCA-027
STATE of New Mexico, Plaintiff-Appellant,
v.
Benjamin C. GONZALES and Richard Quintana, Defendants-Appellees.
No. 18818.
Court of Appeals of New Mexico.
December 21, 1998.
Certiorari Denied February 2 and 4, 1999.
*356 Tom Udall, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellant.
Wade H. Russell, Santa Fe, for Appellee Gonzales.
Phyllis H. Subin, Chief Public Defender, Christopher Bulman, Assistant Appellate Defender, Santa Fe, for Appellee Quintana.
Certiorari Denied, No. 25540, February 2 and No. 25551, February 4, 1999.

OPINION
HARTZ, Chief Judge.
{1} The State appeals the district court's order suppressing drugs discovered during a consensual search of Defendants' vehicle. Officers had stopped the vehicle on the basis of an informant's tip. The district court ruled that the informant's tip did not create the reasonable suspicion necessary to justify the stop. We disagree and reverse.
{2} The only evidence concerning the tip was testimony by the officer who claimed to have received the tip. That testimony, if believed, required a finding of reasonable suspicion. Although the district court was not required to believe the testimony, we presume that it did so because (1) the testimony was uncontradicted, (2) the court failed to set forth on the record any reason for disbelieving it, see State v. Lovato, 112 N.M. 517, 521, 817 P.2d 251, 255 (Ct.App.1991), and (3) the court's oral statements and its ruling on another issue indicate that the court believed the officer.

I. BACKGROUND

{3} The testifying officer was Agent John Garcia of the Santa Fe Police Department. On January 20, 1996, he received a tip from a confidential informant that Benjamin Gonzales and Richard Quintana were making deliveries of methamphetamine on Airport Road near the golf course. According to the informant, the men were driving a tan Dodge Ram Charger with New Mexico license plate number 134-HML. The informant reported having seen methamphetamine in the vehicle earlier in the day. Approximately twenty times in the past the informant had given information to police officers, with "probably about a ninety percent case clearance."
{4} Agent Garcia and two other narcotics officers drove to Airport Road and set up a surveillance. They apparently knew where the vehicle was parked but decided not to move close enough to "eyeball" it in order to avoid jeopardizing another police narcotics operation taking place in the same area. After waiting about thirty minutes, the officers saw the vehicle drive by. They called for backup assistance and stopped the vehicle.
{5} There is conflicting testimony about what happened next. Agent Garcia testified as follows: After separating and pat-searching the two men, he told Gonzales that the police had received information that he and Quintana were currently in possession of controlled *357 substances. He asked Gonzales for permission to search the vehicle. Gonzales said that there was nothing in the vehicle and told the officers that they could "go ahead and check it." Garcia searched the vehicle and found a plastic bag containing a small amount of white powder, which field-tested as methamphetamine. The officers then arrested Gonzales and Quintana for possession of a controlled substance, handcuffed them, and drove them to the police station.
{6} In contrast, Gonzales and Quintana testified that the officers pulled them out of the vehicle at gunpoint and immediately handcuffed them, frisked them, and put them into a police car. All that the officers said to Gonzales at the scene was "manos para arriba" (hands up). The officers never asked for permission to search the vehicle, and neither Gonzales nor Quintana consented to a search.
{7} Defendants moved to suppress the methamphetamine on three grounds: (1) the police lacked reasonable suspicion to stop the vehicle, (2) the stop was actually an arrest unsupported by probable cause, and (3) there was no valid consent to the search. Defendants challenged the credibility of Agent Garcia and the trustworthiness of the informant's tip.
{8} Following the presentation of testimony at the hearing, the district court rejected Defendants' contentions 2 and 3 but agreed with the first contention. The court explained:
[T]he view of the court is that the defense loses on both whether or not this was an arrest situation and whether or not there was a consent. The only issue before me is whether or not this is a case of the officers having reasonable suspicion at the time they stopped the vehicle.
I agree with defense counsel that this is not the [State v. Pallor, 1996-NMCA-083, 122 N.M. 232, 923 P.2d 599] scenario. This is not a concerned citizen giving information to the police; that this is a confidential informant giving information to the police which is then, in the view of the court, not corroborated by the police.
The evidence that was presented that I turn on is the fact that the confidential informant told the officers that these individuals were making deliveries. So, in addition to the identification of the car, the licence plate number, the officers were given information which could be checked by surveillance. And I find that they did no surveillance to speak of.
They located the car and had it pulled over, and the officer's testimony was they didn't want to burn something else that they were doing, something else that was going on. There was no attempt made by the officers to observe what these individuals were doing  whether or not there was any other observable activity going on that would verify or confirm the information given to them by the confidential informant.
This is the scenario that wasn't addressed under [State v. De Jesus-Santibanez, 119 N.M. 578, 581, 893 P.2d 474, 477 (Ct.App.1995)] . . . because the facts in that case didn't get to the issue of whether or not the uncorroborated statements of a confidential informant are sufficient to establish reasonable suspicion.
In this case we have no other observations from the officers that can objectively be looked at to decide whether or not the officer had enough information for pulling this vehicle over. The officer's only statement was that this confidential informant had been helpful or that information had been correct in, and I put that down, about ninety percent of the time. Without any other follow-up or other investigation from the officers on the scene, they were very hasty in making their stop.
In its written order, the district court stated:
On defendants' arguments that this was an arrest situation requiring probable cause for a stop and that a valid consent was not given, the Court rules against defendants. On the issue of reasonable suspicion for the initial stop, the Court finds against the state, finding there was insufficient evidence to establish reasonable suspicion for this particular stop.
The court did not enter any findings of fact.

II. DISCUSSION

A. Standard of Review

{9} It is a bedrock principle of appellate practice that appellate courts do not decide *358 the facts in a case. Fact-finding is the task of the trial judge or the jury. Our role is to determine whether the lower court has applied the law properly. Yet the rulings that come before us for review ordinarily have both factual and legal components. To determine whether the law has been properly applied, we need to know what facts were found. Given one set of facts, the ruling would be legally correct; given a different set of facts, the ruling would be unsound.
{10} On most occasions, the procedures below enable us to determine the factual basis of the ruling. For example, when the ruling below was based on a jury verdict, we ordinarily can tell what facts the jury found, because we know how the jury was instructed on the law. And when the ruling below was a judgment in a civil case after a non-jury trial, we ordinarily know what facts were found by the trial judge, because the judge is required to enter a decision setting forth findings of fact. See Rule 1-052(B) NMRA 1998.
{11} There are some proceedings, however, in which the decision comes to us in a form that does not disclose what facts were found below. This is a regular occurrence when we review decisions on motions to suppress evidence in criminal cases. No rule of criminal procedure requires the district court to set forth the factual basis of its decision.
{12} How should an appellate court perform its task of reviewing for legal error when it does not know what facts were found below? In particular, how should it proceed in reviewing a ruling on a motion to suppress when the district court has entered no findings of fact?
{13} One alternative would be for the appellate court to find the facts itself. Of course, as noted above, we reject that approach. The vantage of the appellate bench is a poor one from which to assess credibility and perform other components of the fact-finding task.
{14} A second alternative would be to remand to the district court for findings of fact. But that practice would conflict with our Supreme Court's determination  as reflected in the Rules of Criminal Procedure that it has promulgated  not to require findings of fact for rulings on suppression motions. Hence, we should be reluctant to remand.
{15} Thus, our practice has been to take a third course  employ presumptions. As a general rule, we will indulge in all reasonable presumptions in support of the district court's ruling. See State v. Wagoner, 1998-NMCA-124, ¶ 16, 126 N.M. 9, 966 P.2d 176.
{16} But there is one constraint on this approach. We will not presume that the district court has rejected uncontradicted testimony. Indeed, we presume the opposite. In Lovato, 112 N.M. at 521, 817 P.2d at 255, this Court adopted the rule for suppression motions that a trial judge who "rejects uncontradicted testimony based solely on a determination of credibility, [should] indicate in the record the reasons for [doing so]." In the absence of such a statement by the court, we infer that it credited the uncontradicted testimony.
{17} Here, the Lovato rule, together with other indications in the record, compels the inference that the district court adopted Agent Garcia's account. The district court entered no findings of fact. Nor did it state for the record any reason for disbelieving Garcia's uncontradicted testimony regarding the grounds for stopping Defendants' vehicle. Because the court was required by the Lovato rule to provide an explanation in the record if it disbelieved Garcia, we presume that it believed him. Moreover, no statement by the court implied that it disbelieved the testimony. On the contrary, the court (in the comments quoted above) summarized the agent's testimony and simply decided that the evidence did not support reasonable suspicion for the stop without any suggestion by the court that it doubted the testimony. In addition, the court manifested its faith in Garcia's credibility when it rejected Defendants' contention that the consent to search was invalid, thus clearly crediting Garcia's version of events rather than Defendants'.
{18} To be sure, there may well have been grounds for the district court to question *359 Garcia's credibility. Defendants' answer briefs point to apparent discrepancies in his testimony concerning several matters that would not affect the existence of reasonable suspicion: (1) Garcia's view of Defendants' vehicle during the surveillance, (2) Garcia's practice regarding use of consent forms for searches, (3) the quantity of drugs that the informant reported seeing in the vehicle, and (4) whether Garcia and his fellow officers were on duty. But the existence of such grounds does not obviate the Lovato requirement that the district court explain its disregard of testimony that is uncontradicted on the material issues. Lovato made clear that even when there are sound reasons for disbelieving uncontradicted testimony, see id. (listing four such reasons), the district court must still set forth on the record why it disbelieved the testimony, see id.
{19} In short, the apparent discrepancies described by Defendants do not alter the Lovato presumption that the district court believed Garcia's account of why the officers stopped Defendants' vehicle. Thus, we proceed on the assumption that the district court believed that account.

B. Reasonable Suspicion

{20} "A police officer may stop a vehicle if he has reasonable suspicion that a law has been or is being violated." Pallor, 1996-NMCA-083, ¶ 12, 122 N.M. 232, 923 P.2d 599. To have reasonable suspicion, the officer must be "aware of specific articulable facts, [which,] together with rational inferences from those facts, ... would lead a reasonable person to believe criminal activity occurred or was occurring." Id. (internal citation and quotation marks omitted). Assuming the truth of Agent Garcia's testimony, the officers here had the requisite reasonable suspicion to justify stopping Defendants' vehicle.
{21} The legality of the stop in this case depends exclusively on the trustworthiness of the informant's tip, because the tip was the only reason for the stop. Agent Garcia testified that he observed no suspicious activity on the part of Defendants at any time. The officers simply located the vehicle described by the informant and stopped it.
{22} Nevertheless, reasonable suspicion can be based on an informant's tip alone. See State ex rel. Taxation & Revenue Dep't Motor Vehicle Div. v. Van Ruiten, 107 N.M. 536, 539, 760 P.2d 1302, 1305 (Ct.App. 1988) (citizen-informant). Because probable cause is a more demanding standard than reasonable suspicion, see Alabama v. White, 496 U.S. 325, 328-30, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); State v. Eskridge, 1997-NMCA-106, ¶ 20, 124 N.M. 227, 947 P.2d 502, it is instructive to review the law regarding when an informant's tip suffices to establish probable cause.
{23} In State v. Cordova, 109 N.M. 211, 217, 784 P.2d 30, 36 (1989), our Supreme Court adopted, as a matter of state constitutional law, the Aguilar-Spinelli test for evaluating whether information from an informant establishes probable cause. The Aguilar-Spinelli test was developed by the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), but later was abandoned by the Court in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As we recently explained, "Cordova held that the allegations of an informant alone cannot provide probable cause to issue a search warrant unless officers can show both (1) the reliability of the information and (2) credibility of the informant (referred to as the two prongs of the Aguilar-Spinelli test)." Eskridge, 1997-NMCA-106, ¶ 19, 124 N.M. 227, 947 P.2d 502. Reliability of the information is established by setting forth "some of the underlying circumstances from which the informant concluded that the facts were as he claimed they were." Cordova, 109 N.M. at 213, 784 P.2d at 32 (internal quotation marks and brackets omitted). Thus, a more precise name for the reliability prong is the basis-of-knowledge prong. See id.
{24} Turning to the evidence before us in this case, we first address the basis-of-knowledge prong. Garcia testified that the informant reported having seen methamphetamine in the vehicle earlier that day. Thus, *360 the informant possessed personal knowledge of unlawful activity; the informant was not merely passing on a rumor. Moreover, the informant's observation was sufficiently recent to support reasonable suspicion, if not probable cause (an issue we need not resolve).
{25} As for the credibility prong of the Aguilar-Spinelli test, Agent Garcia's uncontradicted testimony establishes the credibility of the informant. According to Garcia, the informant had previously provided officers with information about twenty times, with "probably about a ninety percent case clearance." In Cordova our Supreme Court held that an informant's credibility was sufficiently established by the officer's sworn statement that the informant "had provided information in the past which the affiant `did find to be true and correct from personal knowledge and investigation.'" Id. at 217, 784 P.2d at 36. The proof of credibility here was at least as strong as in Cordova.
{26} A useful case for comparison is Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). At that time the United States Supreme Court was still applying the Aguilar-Spinelli test to evaluate whether an informant's tip sufficed for probable cause. See Adams, 407 U.S. at 147, 92 S.Ct. 1921. In Adams, however, the issue was whether an officer had the reasonable suspicion necessary to justify requiring the defendant to roll down his car window. See id. at 146 n. 1, 92 S.Ct. 1921. The officer was on car patrol duty in a high-crime area at about 2 a.m. when "a person known to [him] approached his cruiser and informed him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist." Id. at 144-45, 92 S.Ct. 1921. The officer went to the indicated vehicle, tapped on the closed car window, and asked the occupant to open the door. See id. at 145, 92 S.Ct. 1921. When the occupant rolled down the window, the officer reached into the car and removed from the occupant's waistband a revolver that had not been visible from outside the car. See id. The Supreme Court held that the officer's conduct was justified by the reasonable suspicion provided by the informant's tip, even though it may not have satisfied the Aguilar-Spinelli test for probable cause for an arrest or search warrant. See Adams, 407 U.S. at 147, 92 S.Ct. 1921. The informant's tip in our case fits the Aguilar-Spinelli test much better than did the tip in Adams. In Adams the sole evidence of the informant's credibility was that the officer knew him, and there was no indication of the basis of the informant's knowledge.
{27} We are not persuaded by Defendants' argument that the officers would not have reasonable suspicion for the stop until they confirmed some of the informant's tip through further investigation. Our precedents, including those cited by Defendants, impose no such requirement. To be sure, in several of our prior cases in which we found reasonable suspicion, the officers had confirmed a tip; but we did not need to decide whether such confirmation was essential to establish reasonable suspicion. See, e.g., Eskridge, 1997-NMCA-106, ¶¶ 17-21, 124 N.M. 227, 947 P.2d 502. Likewise, the fact that in prior cases the evidence of the informant's credibility may have been stronger than here, see, e.g., Pallor, 1996-NMCA-083, ¶ 13, 122 N.M. 232, 923 P.2d 599, does not imply that investigative corroboration is necessary whenever there is a lesser showing of credibility than in those cases. As previously noted, there was a sufficient showing of credibility in this case, and we need not decide when the showing is so weak that corroboration of the tip is required. We recognize that in State v. Bedolla, 111 N.M. 448, 452, 806 P.2d 588, 592 (Ct.App.1991), we held that there was insufficient corroboration to create reasonable suspicion. But in that case the informant was anonymous, so there was absolutely no evidence of credibility of the informant.
{28} Although we agree that in some cases investigative confirmation of a tip may be necessary to establish reasonable suspicion, this is not such a case. Garcia's testimony sufficiently established the informant's credibility and basis of knowledge to justify the stop. See generally 4 Wayne R. LaFave, Search and Seizure § 9.4(h) (3d ed.1996) (discussing reasonable suspicion based on informant tip).
*361 {29} Finally, we note that Defendants do not argue on appeal that the district court's order suppressing the evidence should be affirmed on another ground.

III. CONCLUSION

{30} For the above reasons, we reverse the district court's order suppressing the evidence seized from Defendants' vehicle.
{31} IT IS SO ORDERED.
DONNELLY and FLORES, JJ., concur.